## NEW CENTURY CASUALTY CO. v. CHASE et al.

### Civ. A. No. 148.

District Court, S. D. West Virginia.

July 10, 1941.

770

Wilbert H. Norton, of Huntington, W. Va., for plaintiff.

Musgrave & Blessing, of Point Pleasant, W. Va., for defendants Winnie Chase, adm'x of estate of John J. Chase, deceased, and W. W. Rowsey, Sheriff of Mason County, W. Va., and as such adm'r of estate of Edward S. Chase, deceased.

Jackson G. F. Johnson, of Point Pleasant, W. Va., for L. L. McClure, guardian ad litem of Helen Diddle, an infant.

HARRY E. WATKINS, District Judge.

Plaintiff seeks a declaratory judgment that a certain automobile liability insurance policy issued by it to John J. Chase was not in effect at the date of accident in which one person was killed and two others were injured. Defendants answered, and plaintiff then moved for summary judgment. The case has been submitted to me for decision upon the pleadings, plaintiff's depositions, and an agreed statement of facts.

Three questions are raised by the pleadings as follows: (1) Is there more than $3,000 involved? (2) Is there a controversy within meaning of act? and (3) Was policy in effect at date of accident?

Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, I make the following findings of fact and conclusions of law:

Findings of Fact.

On November 19, 1939, plaintiff, an Illinois corporation, issued to John J. Chase, doing business as Chase Insurance Agency, a resident of West Virginia, its national standard automobile liability policy, covering a Buick sedan automobile owned by John J. Chase. The policy in-sured against injury liability to the extent of $5,000 each person, and $10,000 limit for each accident. It became effective November 19, 1939, and the premium thereon was paid for one year. John J. Chase, the insured, died intestate on March 24, 1940, leaving surviving as his next of kin and heirs at law, a son, Edward S. Chase, and his wife, Winnie Chase.

1. Prior to his death, John J. Chase was the plaintiff's licensed insurance agent at Point Pleasant, W. Va. The automobile covered was used for pleasure and in connection with the business of the insured. The words "Chase Insurance Agency" were painted on the side of the automobile. Edward S. Chase, the son of assured, was an insurance solicitor and collector for the agency in connection with policies issued by plaintiff.

2. The insurance contract contained the following provisions under "Conditions", Section 6:

"6. Assignment. No assignment of interest under this policy shall bind the company until its consent is endorsed hereon; if, however, the named insured shall die or be adjudged bankrupt or insolvent within the policy period, this policy, unless cancelled, shall if written notice be given to the company within thirty days after the date of such death or adjudication, cover (1) the named insured's legal representative as the named insured, and (2) subject otherwise to the provisions of Paragraph III, any person having proper temporary custody of the automobile as an insured, until the appointment and qualification of such legal representative, but in no event for a period of more than thirty days after the date of such death or adjudication."

3. On March 27, 1940, Edward S. Chase advised plaintiff by letter of his father's death, and, upon request to carry on the agency in his own name, was permitted to do so. He was licensed as an agent of plaintiff through the insurance department of the State of West Virginia on April 1, 1940.

4. On May 19, 1940, while the defendant Arthur Goodwin was driving a car, accompanied by Edward S. Chase and Helen Diddle, the automobile ran off the road and struck a bridge near Point Pleasant, causing the death of Edward S. Chase, and injuries to Helen Diddle. Thereafter Helen Diddle, through her counsel, asserted

a claim for her injuries, which she offered to compromise for $3,000, charging that the automobile involved was covered, so far as her injuries were concerned, by the insurance policy issued by plaintiff. Likewise Winnie Chase, Administratrix of the estate of John J. Chase, claimed that the insurance policy was in full force and effect at the date of the accident, and demanded that the plaintiff defend any suit or suits that might be instituted against her growing out of such accident, and pay any judgments thereon. On the contrary, the plaintiff denied that the insurance policy was in effect at the date of accident, denied that it was required to defend any suits growing out of such accident, and denied any liability for injuries.

5. No legal or personal representative of the estate of John J. Chase was appointed until May 27, 1940, more than two months after his death and about one week after the accident. On that date Winnie Chase was appointed administratrix of his estate.

6. No legal or personal representative was appointed for Edward S. Chase until October 31, 1940, when W. W. Rowsey, Sheriff, was appointed as such administrator.

7. No assignment was made of the interests of John J. Chase, doing business as Chase Insurance Agency, in such insurance policy, and no transfer of such interests to any one was approved by the plaintiff.

8. After this action was instituted, Helen Diddle, defendant, instituted a suit in the Circuit Court of Mason County, West Virginia, against Winnie Chase, Administratrix of the estate of John J. Chase, deceased, for the amount of $3,000 for injuries received in such accident.

9. Upon the filing of this action, plaintiff paid the sum of $13.70 into court, this being the unearned pro-rata premium on such policy from April 24, 1940.

## Conclusions of Law.

(1) The matter in controversy in this action exceeds $3,000.

The complaint alleges that the matter in controversy exceeds $3,000. Since this allegation is not traversed in the answers, or amended answer, it must be taken as true. The amended answer filed on behalf of Helen Diddle merely says that since the declaratory judgment proceeding was started, she has filed suit in the state court, and asked for damages of only $3,000, and that for this reason alone this court does not have jurisdiction. She does not deny that more than $3,000 was in controversy at the time this proceeding was instituted, and does not deny that there are matters in controversy in addition to the payment of her claim. A general allegation in the complaint as to the amount in controversy when not traversed is sufficient, unless qualified by other allegations which require dismissal. Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 729, 83 L.Ed. 1111. Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction. St. Paul Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845. Federal jurisdiction depends on the facts at the time suit is commenced, and subsequent changes neither confer nor divest it. Ford, Bacon & Davis v. Volentine, 5 Cir., 64 F.2d 800; Randall v. Becton-Dickinson Co., D.C., 18 F.2d 631.

The controversy here presented includes not only an obligation to indemnify the assured against liability, but the duty to defend any action or actions instituted by any of the injured parties. The amount in controversy in proceedings for declaratory judgment, where an automobile liability insurance policy is involved, as a general rule, is the maximum amount for which the company could be held liable under the terms of the policy. 16 A.J. 325; Davis v. American Foundry Equipment Co., 7 Cir., 94 F.2d 441, 115 A.L.R. 1486, 1490; Commercial Casualty Co. v. Humphrey, D.C., 13 F.Supp. 174; Builders & Manufacturers Mut. Casualty Co. v. Paquette, D.C., 21 F.Supp. 858; Travelers Ins. Co. v. Young, D.C., 18 F.Supp. 450.

(2) An actual controversy cognizable under the Declaratory Judgment Act, 28 U.S.C.A. § 400, is involved in this proceeding. This controversy exists not only between plaintiff and insured, but also between plaintiff and those claiming damages for injuries received. Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. ——. Prior to the latter decision there was some conflict in the decisions on this question.

(3) Plaintiff is not liable under its policy either to defend any suit arising out

of this accident, or pay any judgment that may be rendered in such suit.

(4) The policy in question covered John J. Chase or any person using the automobile "with the permission of the named insured". This permission ceased upon his death, and no contention is made by the defendants that insurance was extended under that paragraph of the policy. They rely on Section 6 of the policy, quoted above.

(5) In order to establish liability upon the plaintiff under the first subdivision of Section 6, two conditions must be met. First, written notice must be given to the insurance company of the death of the named insured within thirty days from the date of death; and, second, a legal representative must be appointed. The first condition was complied with, but nothing was done to meet the second condition until some time after the accident. The rights of the parties are to be considered as of the time of the accident. Collins v. Northwest Casualty Co., 180 Wash. 347, 39 P.2d 986, 97 A.L.R. 1235. Consequently there is no liability under the first subdivision of Section 6.

(6) I cannot agree with the contention made by the defendant Helen Diddle that Edward S. Chase was a "legal representative" within the meaning of the policy. It is contended by the defendant that the words "legal representative" as used in this policy do not mean personal representative, such as an administrator, but include the assigns of the assured, and that the son was such assignee, becoming such assignee by reason of the fact that the plaintiff appointed him as its agent after the father's death. I can understand that in some type of insurance contracts the words "legal representative" might properly be given such broad interpretation, but in this paragraph of this particular contract they refer to the personal representative.

After using the words "legal representative" in part (1), coverage is given to persons having custody of the automobile "until the appointment and qualification of such legal representative" for a period of thirty days. While the policy covered any "loss occurring incident to the agency", the agency, being only a personal contract, terminated with the death of John J. Chase. The subsequent appointment of the son as agent for the company at Point Pleasant was not the appointment of a legal representative of the father. The requirement of the policy was a legal representative of the named assured, and not a legal representative of the insurer.

(7) Coverage was not extended under part (2) of Section 6 because that coverage extending to persons having temporary custody of the automobile until the appointment and qualification of an administrator expired thirty days after the insured's death. The purpose of this provision is to give the relatives who have custody of the car thirty days coverage in which to have a personal representative appointed, or to have the policy assigned to some person as provided therein.

(8) There was no assignment of the policy, and no endorsement of such assignment thereon.

(9) There is no merit in the argument that plaintiff is estopped to seek the relief asked. When no administrator was appointed, and no request made for an assignment of the policy, the company could assume that it was the intention of the interested parties to let it expire under the terms of the contract. Until the appointment of the administrator after the accident in question, there was no one to whom the unexpired premium could be paid. Had the company been more careful to notify the parties of their rights under the contract, this difficulty might not have arisen. The terms of an insurance contract are so long and complicated that the average person does not try to read and interpret them, and insurance companies frequently endeavor to assist their patrons so far as possible in this task. However, the plaintiff has done no wrong, and I cannot say that its conduct has brought injury to any one.

The relief asked in the complaint is granted.