Merrimack,
No. 4244.

HARDWARE MUTUAL CASUALTY COMPANY *v.* MAX TOBYNE & a.

Argued October 7, 1953.
Decided October 30, 1953.

320

*Sullivan & Gregg* and *S. Robert Winer* (*Mr. Winer* orally), for the plaintiff.

*Frederic J. Grady* and *John B. Ford* (*Mr. Ford* orally), for the defendants Underwood and Sault.

*Raymond K. Perkins*, for the defendant Tobyne, furnished no brief.

DUNCAN, J.   In essence, this case presents the question of whether the Financial Responsibility Act (R. L., c. 122, as amended) requires that a motor vehicle liability policy issued thereunder insure the named insured against liability arising out of his operation of an uninsured motor vehicle owned by his wife.   For reasons herein-

after indicated, we are of the opinion that it does not impose such a requirement, and that the plaintiff insurer has no obligations with respect to the pending law actions.

The defendants urge at the outset that the "findings" of the Insurance Commissioner made pursuant to Revised Laws, chapter 321, sections 13, 14, should be considered to be the "law of the case," conclusive upon the parties, despite what was said in *American Motorists Ins. Co.* v. *Garage*, 86 N. H. 362, where it was held that such findings were not a judicial determination and not admissible in later litigation as evidence of the facts found. The contention now advanced is based upon the provisions of Revised Laws, chapter 414, by which the procedure which formerly appeared in Public Laws, chapter 239, relating to appeals from the Public Service Commission, was upon revision of the statutes made applicable to other boards and commissions, and "any state department or official concerning whose decision a rehearing or appeal is sought" (*s.* 1); and upon the provisions of section 22 making an appeal under chapter 414 an exclusive remedy.

The provisions of section 22 were derived from statutes enacted in 1937, relating to the Milk Control Board and Water Control Commission (Laws 1937, *c.* 107, *s.* 33; *c.* 133, *s.* 94) where appeals were expressly provided. See R. L., *c.* 196, *s.* 16; *c.* 267, *s.* 77. No such provision has been made with respect to findings by the Insurance Commissioner under R. L., *c.* 321, *supra;* and chapter 414 is by its terms restricted in application to decisions made the subject of appeal "when so authorized by law." *S.* 2. *Petition of Dondero,* 94 N. H. 236. *Cf.* Laws 1947, *c.* 261, *ss.* 2(d), 9. Since no appeal from findings of the Insurance Commissioner is authorized by law, and none is sought in this proceeding, R. L., *c.* 414, is here inapplicable, and cannot be held to change the effect of the holding of *American Motorists Ins. Co.* v. *Garage, supra.* It follows that the rights of the parties are to be determined without reference to the Commissioner's findings. *Id.,* 371.

Protection against liability arising out of the operation of automobiles other than the one described in the policy is afforded by the provisions of the "Statutory Motor Vehicle Liability Policy Indorsement" attached to the policy. See R. L., *c.* 122, *s.* 18. The endorsement in question was issued pursuant to the statute, the requirements of which are of overriding importance in determining the rights of the parties. Section 1 VII, of the Financial Responsibility Act (R. L., *c.* 122) specifies provisions which shall

be contained in any "motor vehicle liability policy" issued in this state (s. 18). Paragraph (a) of subsection VII sets out the basic terms of the policy. Paragraph (b) requires that the policy shall "further" provide "indemnity for or protection to the named insured and to the spouse of such named insured as insured if a resident of the same household, or the private chauffeur or domestic servant acting within the scope of the employment of any such insured with respect to the presence of any such insured in any other motor vehicle, from liability as a result of accidents which occur in New Hampshire due to the operation of any motor vehicle, trailer, or semi-trailer not owned in whole or in part by such insured, provided, however, the insurance afforded under this subparagraph (b) applies only if no other valid and collectible insurance is available to the insured."

By this paragraph the insurance required with respect to the described automobile is required to be extended to the operation of other vehicles, with certain exceptions which are pertinent here. The extended protection is to be afforded to the "named insured and to the spouse of such named insured, as insured . . . or the . . . chauffeur or domestic servant . . . of any such insured." Such protection is to be afforded "with respect to the presence of any such insured in any other motor vehicle," from liability due to the operation of "any motor vehicle . . . not owned in whole or in part by such insured."

The problem is what is meant by "such insured" in the phrase last quoted. Was it the intention of the Legislature to withhold the extended protection when the "other motor vehicle" involved is owned by any one of the persons specified, or only when it is owned by the person sought to be made liable? The plaintiff urges that the former interpretation is correct while the defendants argue that the Legislature intended the latter.

As has been frequently pointed out, the purpose of the act was "to provide compensation for innocent persons who might be injured through faulty operation of motor vehicles" (*Hartford Ind. Co.* v. *Wolbarst*, 95 N. H. 40, 43; *Farm Bureau Ins. Co.* v. *Martin*, 97 N. H. 196, 199), and in construing the statute that purpose is to be kept in mind. On the other hand the protection required by the statute is not without limits. Had the greatest possible protection in the operation of other motor vehicles been intended, no exception with respect to such vehicles would have been made. Obviously such an unlimited extension of a standard policy would have been imprac-

ticable, for the insurer's liability would have been virtually without limit, and premiums would necessarily have been correspondingly increased.

If recognition were to be given solely to the purpose of protecting the public, the defendants' contention might be thought correct, because less restrictive of the scope of the protection required. But in interpreting the statute, consideration must also be given to other allied provisions.

The Act (R. L., c. 122) requires proof of financial responsibility in the event of conviction of violation of the motor vehicle laws (s. 3), and in the event of accident (s. 5). (Laws 1951, c. 66, s. 1). Such proof may consist of a certificate either that a motor vehicle liability policy is in effect, or that a motor vehicle liability bond has been issued. S. 20 I (Laws 1951, c. 66, s. 5); s. 1 VI. What will constitute such a policy or bond is defined by section 1 VII, previously quoted, and by section 1 VIII, now to be considered.

In general, paragraph (a) of subsection VIII parallels paragraph (a) of subsection VII. Paragraph (b) of subsection VIII requires that a bond shall "further" provide protection to the "obligor and to the spouse of such obligor . . . a private chauffeur or domestic servant in the employ of any such obligor." The protection is required with respect to the presence of "any of said persons" in any other automobile, from liability due to the operation of any motor vehicle not owned in whole or in part "by said persons."

While a close comparison of the two paragraphs (b) reveals some discrepancies in phraseology, one of which apparently results from an amendment of the original bill (House Journal, 1941, p. 1105), it is evident that the Legislature intended to require essentially the same protection whether responsibility should be established by a bond or by a policy. Since the two types of proof may be used interchangeably, there is no reason to believe that the Legislature intended to except from coverage in the one case any different class of vehicles than in the other.

From the language of subsection VIII (b) with respect to vehicles owned by "said persons," it is evident that the Legislature did not intend to restrict the excepted vehicles to such as were owned by the person sought to be made liable. Had it so intended, it would have excepted any motor vehicle owned by "said person" rather than "said persons." Hence we may properly conclude that the words "owned . . . by such insured" in subsection VII (b) are similarly used in an inclusive or plural sense, to describe any

vehicle owned by any insured, rather than by only the insured sought to be made liable. It follows that since Tobyne's wife became an insured under the endorsement, the statute did not require that he be insured in the operation of the vehicle owned by her.

The language used in the statutory endorsement itself appears to adopt this view. Coverage is provided in the operation of other automobiles "provided such other automobile is not owned . . . by such named insured, spouse, chauffeur or servant." Since the truck which Tobyne was operating when the collision occurred was owned by his wife, the endorsement provides no insurance coverage; and as the statute is interpreted, such coverage was not required. *Employers &c. Corp.* v. *Roux*, 98 N. H. 309.

The vehicle is likewise excluded from coverage by the standard policy provision that the insurance does not apply "to any automobile . . . furnished for regular use to the named insured." See *Davy* v. *Merchants &c. Cas. Co.*, 97 N. H. 236. Applied to an automobile belonging to the named insured's wife, the exclusion is consistent with the controlling statute.

A judgment should be entered that the plaintiff is under no obligation to defend or indemnify the defendant Tobyne with respect to the claims presented by the pending actions.

*Judgment for the plaintiff.*

All concurred.