Mary **WILKINS**, Carrie Peterson, Carroll T. Webb, Rufus Webb and George Webb, Appellants,

v.

**INLAND MUTUAL INSURANCE COMPANY**, a body corporate, Appellee.

No. 7445.

United States Court of Appeals Fourth Circuit.

Argued Nov. 8, 1957.

Decided March 3, 1958.

———◆———

Percy Scherr, Baltimore, Md. (Elliott W. Dean, Baltimore, Md., on the brief), for appellant Mary Wilkins.

J. Calvin Carney, Baltimore, Md., for appellants Carrie Peterson, Carroll T. Webb, Rufus Webb and George Webb.

Edward F. Shea, Jr., Baltimore, Md. (Sherbow & Sherbow and Theodore Sherbow, Baltimore, Md., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

HAYNSWORTH, Circuit Judge.

This action for a declaratory judgment was instituted by the insurance company in order to determine its rights and obligations under a standard automobile insurance policy with respect to an accident which occurred after the death of the named insured. A motion for summary judgment in favor of the insurance company was granted by the District Court because of the failure to give notice of the death. Inland Mutual Insurance Company v. Peterson, D.C.Md., 148 F. Supp. 392, 393. This appeal by the injured third person and by the mother and brothers of the named insured brings the questions here.

A policy in the form of the "National Standard Automobile Policy—Non-Assessable—Form No. 8" was issued to William Albert Webb of Baltimore, Maryland, as of September 5, 1953. It covered a Buick automobile registered in his name and, by endorsement, also insured his personal liability incurred while in permissive control of a private automobile owned by another.

The named insured died intestate on February 25, 1954. He left surviving him, his mother, Carrie Peterson, a sister and three brothers. Since there was no widow or child, his mother was his sole heir at law under the laws of Maryland.[1] No administration upon his estate has been had.

Shortly after the death, the mother went through the things in the decedent's residence and searched through the Buick automobile, which was parked on the street nearby. She tired of seeing the automobile each time she went to the residence of her deceased son, and, approximately a week after his death, she asked his friend, Richard L. Gant, Jr., to move it. There was also some expectation that Gant might purchase the Buick, and it is not questioned that Gant's subsequent use of the vehicle was with the permission of Mrs. Peterson.

On March 21, 1954, Gant, while driving the Buick automobile, struck a pedestrian, the defendant, Wilkins. She was carried to a hospital where her injuries were thought of insufficient seriousness to require admission. Gant was carried to a police station from which he was released after one of the decedent's brothers had identified him as a permissive user of the vehicle.

No member of the decedent's family ever made any effort to notify the insurance company either of the death of the named insured or of the accident. The company first was informed of these events a full year later when it received a letter from the attorney for Miss Wilkins.

We need not concern ourselves with the effect, under these circumstances, of the failure to give notice of the accident, for, as the District Court held, the failure to give notice of the death of the named insured relieved the insurance company of all liability under the policy.

A liability insurance policy is a personal contract. Except to the extent it is otherwise provided in the policy itself or by statute, it terminates upon the death of the named insured, and any permission which the named insured may have given another to use the vehicle is revoked. 7 Appleman, Insurance Law and Practice, 150; Collins v. Northwest Casualty Co., 180 Wash. 347, 39 P.2d 986, 97 A.L.R. 1235; New Century Casualty Co. v. Chase, D.C.W.Va., 39 F.Supp. 768; Bornbaum v. Employers' Liability Assur. Co., 311 Mass. 282, 41 N.E.2d 54; Frankel v. Allied Mutuals Liability Insurance Co., 288 Mass. 218, 192 N.E. 517;

1. Article 93, Section 136, Annotated Code of Maryland (1951 Edition).

Hobbs v. Cunningham, 273 Mass. 529, 174 N.E. 181.

Against that background of the law, realization of the preoccupations of bereavement led to the insertion in standard policies of provisions for their automatic assignment upon the death of the named insured, subject to specified conditions, and the extension of their coverage (1) to the qualified personal representatives of the insured and, (2) pending the qualification of such a representative, for a limited period, to any person having proper temporary control and custody of the vehicle. The provision here is the standard one current at the time of issue. It is in the following language:

> "12. *Assignment.* Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon; if, however, the named insured shall die or be adjudged bankrupt or insolvent within the policy period, this policy, unless cancelled, shall, if written notice be given to the company within sixty days after the date of such death or adjudication, cover (1) the named insured's legal representative as the named insured, and (2) under coverages A, B and C, subject otherwise to the provisions of Insuring Agreement III, any person having proper temporary custody of the automobile, as an insured, but in no event for a period of more than sixty days after the date of such death or adjudication."

Appleman appears to assume that written notice within the prescribed period is a condition precedent, in the classical sense, to the assignment of the insurance and the extension of its coverage beyond the life of the named insured. See Appleman, Automobile Liability Insurance, 462–465; 7 Appleman, Insurance Law and Practice, 152. It is framed in the language of a condition precedent to the consummation of any contractual relation between the insurance company and the persons within the definitions of the provision. Notice, however, given as late as the sixtieth day after the death is effective to impose upon the insurance company the burden of defending actions and paying idemnity for liabilities accrued at any time within the sixty-day period. Obviously, during the entire period of sixty days, whether the notice is ever given or not, the insurance company is at risk. The substantial rights of third persons, founded upon the provisions of the contract, may be perfected retroactively, or made enforceable, by a voluntary and routine notice over which the company has no control. The clear existence of continuing risk assumed in a voluntary contract supported by adequate consideration suggests a pre-existing contractual relation even though the third party beneficiary must make an affirmative and timely election in order to avail himself of the benefits of the contract. The creation of the power, vested in another, by a mechanical act, to clothe himself with substantial rights and impose upon the promisor extensive detriment, suggests that performance of the mechanical act is a condition to the perfection and enforcement of a pre-existing contractual right rather than a condition precedent to the consummation of new contractual relations.

But whether the condition be designated as precedent or subsequent, written notice is clearly required by the terms of the policy, and, certainly in the absence of legal excuse, compliance is necessary if the liabilities assumed by the company in its policy are to be enforced. Whatever may be said of the language of the provision in other respects, there is no ambiguity in its requirement of written notice within the sixty-day period. We cannot read it out of the policy, or assume that the original parties to the contract intended what they clearly disclaimed.

Should we assume that it is the sort of condition subsequent nonperformance of which may be excused, in an appropriate case, in order to avoid unreasonable forfeiture, the circumstances of the present case do not call

for, or permit, an exercise of the power. Neither Mrs. Peterson, the mother, nor the sister nor any brother is shown to have been under any disability, yet no one of them ever made any effort to give the requisite notice. Mrs. Peterson advances the excuse that, at the time of her son's death, she was ignorant of the existence of the policy. As his mother and sole heir at law, she was under some duty to inquire into his affairs,[2] but she made no inquiry until, in November 1954 when she sought the relevant papers in order to transfer title to the car, she inquired of her surviving son, who was the proprietor of the shop in which the decedent had worked. That son promptly produced, from the place the decedent had kept them in the shop, not only the title papers, but the insurance policy as well. It may be inferred, though on the present record it is not certain, that this son knew of the insurance all the while, though certain it is that it was readily produced when transfer of the vehicle occasioned investigation of related papers. Admittedly, thereafter, Mrs. Peterson, herself, knew of the insurance. Still she did nothing, but seeks to excuse her continued inaction upon the ground that, informed that Miss Wilkins had been dismissed from the hospital and thinking it amounted to nothing, she was conscious of no occasion to examine the policy and she remained ignorant of its requirements. Reasonable belief that

injury sustained in an accident is trivial has been held to excuse compliance with the requirement of notice of the accident,[3] but it bears not at all upon the requirement of notice of the death of the named insured. Notice of every trivial incident which reasonably appears to have occasioned no harm would be unduly burdensome, but notice of the death of the named insured, if the benefits of the policy are to be claimed by the potential beneficiaries of the extended insurance, is not an unreasonable requirement, and it arises upon the death of the insured, whether or not any accident, trivial or grave, has occurred.

▮ From all that appears, the means of information were at hand from the moment of the death of the named insured. Even when the policy was in Mrs. Peterson's hand, she did not trouble herself so much as to look at it or to inquire of the agent who countersigned it of the course that she should pursue.

In applying the clear provisions of contracts, courts are powerless to protect a party from the consequences of his own default when he is completely heedless of his obligations and wholly neglectful of his rights. Even though we assume that strict compliance with the requirement of notice of the death of the named insured might be excused in the face of compelling reasons for noncompliance or delayed compliance, the excuses advanced here do not begin to approach the rea-

2. Such cases as McElroy v. John Hancock Mutual Life Insurance Co. of Boston, 88 Md. 137, 41 A. 112, have no bearing here. The duty of a Trustee in Bankruptcy to marshal the assets of the Bankrupt has not been held to extend to a constant supervision over the continued life of individuals who, conceivably, may have made the bankrupt the beneficiary of a life insurance policy. Ignorance of insurance, beyond the duty of inquiry, and of the death of an individual, beyond the reasonable probability of knowledge, may excuse delay in furnishing proofs of loss, but that does not suggest that the duty of inquiry is not to be discharged or that knowledge gained is to be ignored.

3. Lewis v. Commercial Casualty Ins. Co.,

142 Md. 472, 121 A. 259, 28 A.L.R. 1287; Chapin v. Ocean Accident & Guarantee Corporation, 96 Neb. 213, 147 N.W. 465, 52 L.R.A.,N.S., 227; Baker v. Metropolitan Casualty Insurance Company, 118 Conn. 147, 171 A. 7; Phoenix Indemnity Company v. Anderson's Groves, Inc., 5 Cir., 176 F.2d 246; Lennon v. American Farmers Mutual Insurance Company, 208 Md. 424, 118 A.2d 500. It is to be doubted that when a pedestrian is struck down and carried to a hospital one may reasonably believe that the injuries are so trivial as to excuse noncompliance with the requirement of notice of the accident · even though the injured pedestrian, after examination and emergency treatment, is not admitted to the hospital or is dismissed, but this we need not now decide.

sons, which, in other circumstances, might call for application of the rule of the assumption.

The requirement of notice of the death of a named insured is not an arbitrary thing inserted to entrap the unwary. The substitution of an unknown personal representative, with all of the power of a named insured to extend the coverage under the "omnibus" clause, is a material change in the risk. Only by the requirement of notice can the company assure itself that it will have an opportunity to investigate the situation, and, if it elects to do so, to exercise its reserved right of prospective cancellation. Conditioning liability respecting accidents occurring within the sixty-day period may seem unnecessary to the protection of the opportunity of investigation and of prospective cancellation, but, in the interim between the death and the qualification of a personal representative, the extension of coverage to unnamed,

perhaps numerous, persons, without the restrictions incident to the selectivity with which the ordinary named insured permits the use of his vehicle, is an unusual thing. So unusual, indeed, it is that it is not surprising that the extension of the coverage should be conditioned upon the affirmative election of some one and terminated no later than sixty days after the death unless a personal representative qualifies, in which event, since he stands in all respects as the named insured and the company may look to him as such, the coverage is extended by the timely notice for the duration of the policy period.[4]

We have been referred to no case in which the accident occurred within the notice period and the consequence of the failure to comply with the requirement of notice was in issue. For the reasons stated, however, the result in this situation is controlled by the same considerations which require a denial of coverage

4. Counsel appear to have assumed that even though an administrator had been duly qualified and timely notice of death given, the extended coverage would have expired at the end of the sixty-day period, in April 1954 rather than September 1954. This seems incorrect. If it were not, the notice of death would serve little purpose except to occasion a computation of the unearned premium. The sixty-day limitation upon the duration of the extended coverage is applicable only to the interim situation in which there is no qualified personal representative and coverage is extended to every person who, for whatever reason, may properly have temporary control of the vehicle. Much older forms extended the coverage for the policy period to the qualified personal representative, and the revised provision was designed, not to withdraw that extension of coverage, but to fill the hiatus between the death and the qualification of the personal representative, during which period all coverage was held to have been suspended under the earlier forms of policies. See Collins v. Northwest Casualty Co., 180 Wash. 347, 39 P. 2d 986, 97 A.L.R. 1235. See also in this connection: 7 Appleman, Insurance Law and Practice, 150; Hobbs v. Cunningham, 273 Mass. 529, 174 N.E. 181; Frankel v. Allied Mutuals Liability Insurance Co., 288 Mass. 218, 192 N.E.

517; New Century Casualty Co. v. Chase, D.C.W.Va., 39 F.Supp. 768.

This interpretation of the current version of the provision is supported by the earlier versions. Subpart (2) of an earlier version read:

"* * * (2) Subject otherwise to the provision of Paragraph III, any person having proper temporary custody of the automobile as an insured, until the appointment and qualification of such legal representative, but in no event for a period of more than thirty days after the date of such death or adjudication,"

from which it is clear that the extension of coverage under this subpart was to terminate upon the earlier of (1) the appointment of a personal representative and (2) the expiration of sixty days. Since the first limitation could not be applicable to an extension of coverage under subpart (1), it is not to be supposed that the second was intended to be. The same result is reached by the language of the current version, since reference to Insuring Agreement III, the "omnibus" clause, restricts the coverage, after qualification of a personal representative, to those persons who use the vehicle with his permission. See New Century Casualty Co. v. Chase, D.C.W. Va., 39 F.Supp. 768.

in cases where the accident occurred after expiration of the notice period, but where there had been either a failure of notice or a failure of qualification of a personal representative. See New Century Casualty Co. v. Chase, D.C.W.Va., 39 F.Supp. 768; Whirry v. State Farm Mutual Auto Insurance Co. of Bloomington, Ill., 263 Wis. 322, 57 N.W.2d 330. Because of the failure to give notice of the death of the named insured, the District Court properly construed the extended coverage provision as imposing no liability or obligation upon the insurance company in connection with this accident.

It is claimed, however, that since the named insured had been convicted of drunken driving and, to avoid a suspension of his driver's license and registration plates, this policy had been certified to the Director of Motor Vehicles under the Financial Responsibility Law of Maryland, Code 1951, art. 66½, § 101, a different result is required. Of course, policy provisions in conflict with an applicable statute cannot be given effect, even though there was not in the policy, as there is here, a provision amending the policy to conform it to all applicable statutes. Merchants Mutual Casualty Co. v. Egan, 91 N.H. 368, 20 A.2d 480, 135 A.L.R. 745; Keystone Mutual Casualty Co. of Pittsburgh, Pa., v. Hinds, 180 Md. 676, 26 A.2d 761.

We find nothing in the Maryland Financial Responsibility Law, however, which invalidates the requirement of notice of the death of the named insured or requires a different construction of the provision extending coverage of the policy after his death. The statutes, which are fully set forth in the opinion of the District Court, contain no direct reference to the matter. Nor do they, by implication, require extension of the coverage beyond the life of the individual whose conviction occasioned the certification of the policy.

As the learned District Judge aptly stated [148 F.Supp. 399]:

"The reason for requiring proof of financial responsibility in the instant case was to protect the public against the negligence of an individual, William Albert Webb, who had been convicted of drunken driving. There was no more reason to require a statutory policy covering his automobile after his death than there is to require a statutory policy covering every automobile after the death of its owner. The Maryland statute does not undertake to do this."

We conclude that the motion of the insurance company for summary judgment was properly granted.

Affirmed.