**George W. BOOTH, Appellant,**

v.

**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, a corporation, Appellee.**

**No. 7737.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 22, 1958.

Decided Nov. 6, 1958.

---

T. David Sloan, Jr., Laurens, S. C., and Wm. K. Charles, Jr., Greenwood, S. C., for appellant.

W. Francis Marion, Greenville, S. C., for appellee.

Before SOBELOFF, Chief Judge, SOPER, Circuit Judge, and BARKSDALE, District Judge.

BARKSDALE, District Judge.

This is an appeal from a declaratory judgment construing the South Carolina Motor Vehicle Safety Responsibility Act in its application to the following facts and circumstances. On May 15, 1955, Eddie C. Thompson, a resident of Greenwood County, S. C., had his operator's license suspended for traffic violations for a period of four months. Although during the period of the suspension of

his operator's license Thompson had no legal right to operate an automobile, or to obtain license plates, he nevertheless, on June 11, 1955, purchased a Pontiac automobile in the name of his sister, and, in her name, applied for and obtained license plates for it. Under the South Carolina Motor Vehicle Safety Responsibility Act (S.C.Code, § 46–701 *et seq.*), it was necessary for Thompson to submit proof of financial responsibility to the Highway Department as a prerequisite to a renewal of his operator's license when the period of its suspension had expired. This he did by securing from appellee, American Casualty Company, through the assigned risk plan, an operator's or non-owner's insurance policy, and having such fact certified to the Highway Department by the company. An operator's or non-owner's policy, rather than an owner's policy covering a designated vehicle, was issued because Thompson applied for an operator's policy and did not disclose the fact that he actually owned the Pontiac automobile registered in the name of his sister.

On September 22, 1956, while the policy was in full force and effect, Thompson, while driving his Pontiac automobile, was involved in a wreck with George W. Booth, which resulted in Thompson's death and personal injuries to Booth. Thereafter, George W. Booth instituted an action for damages resulting from the accident against the administratrix of Thompson's estate in a South Carolina state court. After the institution of this state court action, appellee, American Casualty Company, instituted the instant action against the administratrix of Thompson and George W. Booth, seeking a declaratory judgment declaring that it was not liable on its policy for any judgment which might be obtained by Booth against the estate of Thompson. The case was tried by the court without a jury, resulting in a judgment declaring that the policy issued by American Casualty Company to Thompson did not apply to the Pontiac automobile actually owned by Thompson, although registered in the name of his sister, by reason of the following provision of the policy:

"2. The insurance does not apply:

(a) to any automobile owned by the named insured or to a member of the same household other than a private chauffeur or domestic servant of the named insured or spouse."

■ From this judgment, appellant, George W. Booth, has prosecuted this appeal. The District Court found as a fact that the Pontiac automobile here in question was owned by Thompson, although registered in the name of his sister. On the evidence, there can be no doubt of the correctness of this finding. The above quoted language from the insuring agreement of the policy is specific in its statement that the insurance afforded by the policy does not apply to any automobile owned by the named insured, in this case, Thompson. Nevertheless, appellant contends that the broad purpose of the Motor Vehicle Safety Responsibility Act is protection of the public, that the Act should be liberally construed to effectuate this purpose, and that certain provisions of the Act require the conclusion of coverage, notwithstanding the above quoted specific language of the policy to the contrary. The provisions of the Act principally relied upon by appellants are as follows:

"Section 46–750.26. Provisions deemed incorporated in all motor vehicle liability policies. Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein: (1) The liability of the insurance carrier with respect to the insurance required by this chapter shall become absolute whenever injury or damage covered by the motor vehicle liability policy occurs; (2) The policy may not be cancelled or annulled as to the liability by any agreement between the insurance carrier and the insured after the occurrence of the injury or damage;

(3) No statement made by the insured or on his behalf and no violation of the policy shall defeat or void the policy; * * * (6) The policy, the written application therefor, if any, and any rider or endorsement which does not conflict with the provisions of this chapter shall constitute the entire contract between the parties."

"Section 46–750.28. Additional provisions motor vehicle policy *may contain. Any motor vehicle liability policy may provide* (a) that the insured shall reimburse the insurance carrier for any payment the insurance carrier would not have been obligated to make under the terms of the policy except for the provisions of this chapter."

■■■ Consideration of the Act in its entirety discloses that it does not require that an insurance policy issued under the assigned risk plan must cover all risks under any and all circumstances. The Act does require, as one method of proof of financial responsibility, that one of two types of public liability insurance policy be obtained. One type is the owner's policy which must describe explicitly all motor vehicles covered thereby, the other is the non-owner's or operator's type of policy which must insure against loss from liability arising out of use by him of any motor vehicle not owned by him. The policy here in controversy is of the second category. This was the policy applied for by Thompson, his application stating that he owned no automobile. Nowhere in the Act is the duty imposed upon the insurance company to investigate the facts stated in the application for insurance. When a risk is assigned to an insurance company, it is obliged to issue a policy in accordance with the application, providing the premium is paid.

It would seem that subsection (3) of Section 46–750.26 of the Act comes nearer to imposing liability on the insurance company here than any other. This subsection is as follows:

"No statement made by the insured or on his behalf and no violation of the policy shall defeat or avoid the policy;".

■■■ It would seem that this language ordinarily would be sufficient to defeat any claim by the company of fraud in the procurement of the policy or that the company was induced to issue its policy by false statements. However, all the subsections of Section 46–750.26 refer to "the policy" as issued. There is nothing in this section, nor in any other section of the Act, which is sufficient to make an entirely new and different contract or to substitute an owner's policy for an operator's policy. Since the policy issued complied with the requirements of the Act, appellant's claim of coverage must stand or fall upon the contract of insurance which was actually entered into by Thompson and the company. By the very terms of this contract, it did not cover liability resulting from Thompson's use of his own automobile.

■ No South Carolina decisions construing the Act have been cited by either appellant or appellee. Appellant does cite State Farm Mutual Auto Ins. v. Cooper, 4 Cir., 233 F.2d 500, a decision of this court which simply holds that the South Carolina Motor Vehicle Safety Responsibility Act was not applicable to an insurance policy applied for and issued voluntarily and not under the compulsion of the Act. In its opinion, this court cited Barkley v. International Mutual Insurance Co., 227 S.C. 38, 86 S.E.2d 602, which also held that the Act was not applicable to an insurance policy applied for and issued voluntarily and not under the compulsion of the Act. The appellant contended, however, that the public policy of the State of South Carolina required that the provisions of the Act supersede exclusions of coverage contained in the voluntary policy. In rejecting this contention, the court said (86 S.E.2d at page 605):

"We cannot read into the insurance contract, under the guise of public policy, provisions which are

not required by law and which the parties thereto clearly and plainly have failed to include."

In the absence of South Carolina decisions construing their Act, appellee relies on decisions of other states having similar, if not identical, statutes enacted prior to the enactment of the South Carolina Act. The facts in the case of Russell v. Lumbermen's Mutual Casualty Company, 237 N.C. 220, 74 S.E.2d 615, are somewhat similar to the facts in the instant case. One Carrick, under the compulsion of the Act, applied for and obtained an assigned risk operator's policy. The employee of the insurance agent who took Carrick's application knew that Carrick did own a truck, but nevertheless made out his application for an operator's or non-owner's policy. The risk was assigned to appellee and an operator's policy was issued to him. The court held that this policy did not cover liability for injuries resulting from the operation of the motor vehicle owned by Carrick.

In Howell v. Travelers Indemnity Co., 237 N.C. 227, 74 S.E.2d 610, one Howell procured an assigned risk owner's policy covering a 1933 Ford. While operating a different Ford, Howell inflicted injuries and suffered a judgment for damages. The court held that the policy in suit met all the requirements of the Act, but did not cover the liability upon which judgment had been obtained. In answer to the contention that the broad public policy of the Act required coverage notwithstanding the fact that the risk was excluded from the policy, the court said (74 S.E.2d at page 614):

"These considerations render it manifest that the Motor Vehicle Safety and Financial Responsibility Act falls short of its avowed purpose 'to require financial responsibility of reckless, inefficient and irresponsible operators of motor vehicles * * * involved in accidents.' Whether it ought to be brought more nearly into harmony with its declared object is a legislative and not a judicial matter."

In Graham v. Iowa National Mutual Ins. Co., 240 N.C. 458, 82 S.E.2d 381, one Davis owned a Buick car and a Ford truck. He procured an assigned risk policy covering only the Buick. Although the Department of Motor Vehicles should only have permitted the registration of the insured's Buick, it permitted both the Buick and the Ford to be registered in the name of Davis. Nevertheless, the court held that the assigned risk owner's policy did not cover liability for injuries resulting from the operation of the Ford. The court said (82 S.E.2d at page 383):

"The Motor Vehicle Safety and Financial Responsibility Act of 1947 did not require an insurance carrier issuing an owner's policy of liability insurance upon an assumed risk to ferret out and include within the coverage of the policy all motor vehicles owned by the insured and registered in his name, irrespective of the omission of some of them from the insured's application for the insurance, and irrespective of the insured's ability or willingness to pay premiums upon all of them."

The case of Employers Liability Assur. Corp. v. Roux, 98 N.H. 309, 100 A.2d 416, is in accord with the North Carolina cases. See also Hardware Mutual Cas. Co. v. Tobyne, 98 N.H. 318, 100 A.2d 419.

The cases cited by appellant do not support his contention. He places his principal reliance upon United States Casualty Co. v. Timmerman, 118 N.J.Eq. 563, 180 A. 629. The holding of that case is merely that under the New Jersey Financial Responsibility Act, N.J.S. A. 39:6–23 et seq., the insurance company could not cancel its policy after an accident for breach of a warranty or condition precedent as to exclusive ownership of the insured vehicle by the insured. It is true that in a *dictum* the court said that, after the insurance company had given the Commissioner of Motor Vehicles a certificate that it had insured Timmerman, as evidence of his financial responsibility, the company would be estopped to deny the validity of the policy. However, this *dictum* does

riot help appellant. Here the company does not deny the validity of its policy: on the contrary, it asserts the validity of its policy and only asks that its coverage be limited to the coverage recited in the policy.

Woloshin v. Century Indemnity Co., 116 N.J.L. 577, 186 A. 44, does no more than hold, in accord with the Timmerman case, that under the Act, the insurance company could not escape liability on account of a breach of warranty or condition precedent by the insured when the policy was issued.

It is therefore our conclusion that the judgment appealed from should be, as it is

Affirmed.