**INLAND MUTUAL INSURANCE COM-
PANY, Appellant,**

**v.**

**Clifton William STALLINGS; Thomas
W. Smack, Infant; John D. Ramsey
and Nellie Ramsey, surviving parents
of Russell L. Ramsey, deceased; John
D. Ramsey, Administrator of the Estate
of Russell L. Ramsey, deceased; Rita
Lucille Rodda, Infant; et al., Appellees.**

**No. 7741.**

United States Court of Appeals
Fourth Circuit.

Argued Nov. 6, 1958.

Decided Jan. 21, 1959.

Edward F. Shea, Jr., Baltimore, Md. (Sherbow & Sherbow and Theodore Sherbow, Baltimore, Md., on brief), for appellant.

Everett L. Buckmaster and M. King Hill, Jr., Baltimore, Md. (Clater W. Smith, Herbert F. Murray, Clark, Smith & Prendergast, Baltimore, Md.; J. Wilmer Johnson, Prince Frederick, Md.; Samuel D. Hill, Buckmaster, White, Mindel & Clarke, and Melvin J. Sykes, Baltimore, Md., on brief), for appellees.

Before SOBELOFF, Chief Judge, HAYNSWORTH, Circuit Judge, and BOREMAN, District Judge.

SOBELOFF, Chief Judge.

Inland Mutual Insurance Company brought suit for declaratory judgment to determine its obligations to Clifton W. Stallings and to persons making claims against him for injuries sustained in an automobile collision. Inland's liability, if any, arises from an automobile liability policy issued to Stallings pursuant to the Maryland Financial Responsibility Law.

The policy, issued in February, 1956, covered a 1951 Ford, the only motor vehicle then owned by Stallings. On July 3, 1956, he purchased an additional car, a 1950 Ford, but Inland was not notified and did not learn of it until August 8. On July 14, 1956, Stallings was involved in an accident while driving the recently acquired 1950 Ford.

### "Newly Acquired Automobile" Clause

Inland's policy contained Insuring Agreement IV(a)(4), entitled "Newly Acquired Automobile," which extends coverage to:

"an automobile, ownership of which is acquired by the named insured who is the owner of the described automobile, if the named insured notifies the company within thirty days following the date of its delivery to him, and if either it replaces an automobile described in this policy or the company insures all automobiles owned by the named insured at such delivery date; but the insurance with respect to the newly acquired automobile does not apply to any loss against which the named insured has other valid and collectible insurance. The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile."

The District Judge held that this clause extended coverage to the 1950 Ford at the time of the accident.

■ 1. That Stallings did not notify Inland within thirty days after acquiring the 1950 Ford is inconsequential, for coverage under this provision is automatically effected on the newly acquired automobile for thirty days irrespective of notice, and as here, the insured is protected against liability accruing within that time. The cases so hold almost without exception. Western Casualty & Surety Company v. Lund, 10 Cir., 1956, 234 F.2d 916, 919; Hoffman v. Illinois Nat. Casualty Co., 7 Cir., 1947, 159 F.2d 564, 566; 34 A.L.R.2d 936, 944.

Appellant's reliance upon Wilkins v. Inland Mutual Ins. Co., 4 Cir., 1958, 253 F.2d 489, is unwarrantable, for this decision is not in conflict with the District Court's holding in the present case. Involved in Wilkins was a question of the coverage of a specified automobile after the death of its owner, the insured. The clause substituting the personal representative as the insured, with the power in him then, under the omnibus clause, to authorize others to operate the car at the insurer's risk, was conditioned on notice of death being given within sixty days. The case at bar is wholly different. It involves no problem of change of risk by substituting an unknown insured for the one named, but relates to an insurer's liability for damages caused by the person named in the policy while operating an after-acquired vehicle.

■ 2. Nor is automatic coverage limited to replacement vehicles, as the appellant claims, for the clause speaks in the alternative and applies where the described vehicle is replaced *or* where the company insures all automobiles then owned by the insured. It would be unwarranted and arbitrary to restrict this rule to one, rather than both, of the situations provided for. Birch v. Harbor Ins. Co., 1954, 126 Cal.App.2d 714, 272 P.2d 784.

■■ 3. Inland contends that it did not insure all automobiles owned by Stallings when the 1950 Ford was delivered to him on July 3, since the records of the Department of Motor Vehicles show that on July 3 Stallings was not only the owner of the 1951 Ford, insured by Inland, but also owned a 1948 Ford, not insured by it. The District Judge's finding as a fact that on July 3 Stallings owned only the 1951 Ford is amply supported by the evidence. Stallings' testimony, uncontradicted, was that one week before July 3 he delivered possession of the 1948 car and the certificate of title thereto to Dorsey Gray, an automobile dealer. Such delivery and assignment of title were sufficient to pass ownership at that time if the parties so intended, Md. Code (1957), Uniform Sales Act, Art. 83,

Sec. 36(1), even though there has not been compliance with the registration law of the state. Hofslund v. Metropolitan Casualty Ins. Co. of New York, 7 Cir., 1951, 188 F.2d 188. Moreover, the registration records are of little significance in determining passing of title in this case, for the transferee, as a registered automobile dealer, was not required to forward the certificate of title to the Department of Motor Vehicles. Md. Code (1957), Art. 66½, Sec. 47(a).

■ 4. Inland also submits that the provision referring to insuring all automobiles applies only where the policy is issued as a fleet policy to cover several automobiles, and is not applicable where the insured owns only one vehicle. No such distinction can be inferred from the wording of the policy. The same argument was rejected in Horace Mann Mutual Casualty Company v. Bell, D.C. W.D.Ark.1955, 134 F.Supp. 307. Home Mut. Ins. Co. of Iowa v. Rose, 8 Cir., 1945, 150 F.2d 201, relied on by Inland, is only dictum to the contrary.

The "Newly Acquired Automobile" clause, we conclude in agreement with the District Court, extended automatic coverage to the 1950 Ford on July 14, 1956, the date of the collision.[1]

## Maryland Financial Responsibility Law

Stallings' driver's license had been revoked for three moving traffic violations occurring before he was twenty-one years of age. To regain his license he was required to furnish "proof of his continuing financial responsibility in the future." Md.Code (1957), Art. 66½, Sec. 118(b). Sec. 139(a)[2] of the Maryland Financial Responsibility Law allows a person to furnish such proof by obtaining insurance applying only to motor vehicles owned by him, but this limited "proof" restricts his lawful operation to those vehicles specifically designated or appropriately referred to in the proof filed. Such restriction is stamped on the driver's license. The following subsection, 139(b), allows removal of such restriction if the person files proof of financial responsibility by reason of an "operator's policy of insurance, insuring such operator or chauffeur while operating *any* motor vehicle." (Emphasis supplied.)

The policy Inland issued to Stallings covered the 1951 Ford and, in addition, included an "Operators Only Endorsement" insuring Stallings while operating any motor vehicle *not* owned by him.[3] As proof of Stallings' financial responsi-

1. Attention is directed to Mitcham v. Travelers Indemnity Co., 4 Cir., 1942, 127 F.2d 27. Appellant did not rely upon this case, perhaps because while the language used in the Mitcham policy bears some resemblance to that in the Stallings policy, there are striking differences in the fact situations. In Mitcham, not only was notice of the purchase of the additional automobile not given within the time required by the policy, but (unlike the instant case) the accident, too, did not happen until after the expiration of the period. Moreover, the Court expressly refrained from deciding the precise point here considered.

2. "Sec. 139. Restriction in operating motor vehicles when proof of financial responsibility has been filed.
"(a) *Designation of vehicles.*—When proof of financial responsibility is required under Sections 118 and 119 of this article, and such proof is filed with and accepted by the Department, applying to motor vehicles owned by the person filing the said proof, it shall be unlawful

for such person to operate any other motor vehicle within this State, unless or until such other vehicle be specifically designated or appropriately referred to in the proof filed. The Department shall endorse notice of such restriction upon the operator's or chauffeur's license of such person. Violation of this section shall be deemed a misdemeanor and upon conviction shall be punishable by a fine of ten dollars ($10.00) to one hundred dollars ($100.00).
"(b) *Removal of restriction.*—Such operator or chauffeur so restricted may have such restriction removed by filing proof of financial responsibility as required by this article by means of an operator's policy of insurance, insuring such operator or chauffeur while operating any motor vehicle."

3. "Inapplicable to Vehicle Described as Unit No. 1
"Operators Only Endorsement
"In consideration of the premium specified for this policy, it is understood and agreed that such insurance as is afforded

bility, Inland sent an SR22 certificate [4] to the Department of Motor Vehicles, and in reliance upon this the Department issued Stallings an unrestricted driver's license. The SR22 certified that Inland issued to Stallings (1) insurance coverage in respect to the 1951 Ford and also (2) an "operator's policy."

**Effect of "Operators Only Endorsement"**

■ A driver to whom the Financial Responsibility Law does not apply is not required in Maryland to carry any liability insurance. If he has insurance it results from his voluntary agreement with the insurance company, and the parties may decide upon such terms as they see fit, unless specifically forbidden by law. It is different in the case of a driver who is required to file. proof of financial responsibility under the statute. To him no license may be issued unless he effects insurance according to the statutory terms. The policy is presumed to have been issued in compliance with these terms, and the law incorporates them into the policy. 1 Couch, Cyclopedia of Insurance Law, 1929 ed., Sec. 150 at p. 297; Export Leaf Tobacco Co. v. American Ins. Co., 4 Cir., 1958, 260 F.2d 839; Keystone Mutual Casualty Company of Pittsburgh, Pa. v. Hinds, 1942, 180 Md. 676, 26 A.2d 761, 762; Wilkins v. Inland Mutual Insurance Company, 4 Cir., 1958, 253. F.2d 489, 494. Since an unre-

stricted driver's license could be issued to Stallings only upon compliance with Sec. 139(b), the parties concede that the "Operators Only Endorsement" must be the type defined in Sec. 139(b), i. e., "insuring such operator or chauffeur while operating *any* motor vehicle." (Emphasis supplied.)

The District Judge held that an "operator's policy" issued pursuant to Sec. 139(b) must cover the insured while operating *any* motor vehicle, regardless of ownership, and therefore, the "Operators Only Endorsement" was void insofar as it may have attempted to exclude from coverage Stallings' operation of owned vehicles, here the 1950 Ford.

■■ Inland contends that an "operator's policy," within the purview of Sec. 139(b), actually means a policy covering the insured while operating "any motor vehicle not owned by him." This argument disregards the manifest purpose of the Act, which is to protect the public from the reckless operation of motor vehicles by irresponsible persons. The public is afforded protection by Section 139(a) commensurate with the limited license issued thereunder, for the person subject thereto can lawfully operate only those owned vehicles which are covered by insurance. It cannot be said that Section 139(b) was intended to dilute the public's protection by extending law-

---

under the terms and conditions of said policy for liability imposed by law upon the Insured for injury to or death of any person other than such Insured or for liability for damage to property, applies to the named Insured with respect to his operation or use of any private passenger automobile only of which the Insured is personally in control as driver or occupant, subject to the following provisions:

\*    \*    \*    \*    \*

"2. That such automobile is not owned in whole or in part by or registered in the name of the named Insured;"

4. The SR22 form is entitled Maryland Financial Responsibility Insurance Certificate and states as follows:
"The company \* \* \* hereby certifies that there is in effect \* \* \* a

motor vehicle liability policy, as defined in Sections 107 to 130 incl. [now 109–134], of the Motor Vehicle Law of Maryland, issued by the company to Clifton William Stallings, Barston P. O., Calvert County, Maryland, Policy Number 98860. Effective from 2–10–56 to 2–10–57.

\*    \*    \*    \*    \*

"The insurance hereby certified is as follows:
"Bodily Injury Liability X Property Damage Liability X applicable with respect to:

1. The motor vehicle described herein Operator's policy
   1951 Ford 4 dr. sedan.
   Serial No. BICS–111653
2. Operator's Policy X
   Dated 2–9–56.
   Inland Mutual Insurance Company."

ful operation to any motor vehicle without requiring corresponding insurance for liability arising therefrom.

Inland's interpretation would attenuate Section 139(b) to permit the issuance of an unrestricted license without requiring protection for damages caused by the insured while operating a vehicle he owns but of which ownership he has failed to notify the insurance company. The scheme of the legislation precludes any action or inaction by the insured or the insurer, together or separately, to lessen the public protection prescribed by the statute. Where the insurer, by its certificate, induces the issuance of an *unrestricted* driver's license, it should be and is required to respond in damages for the insured's operation of any motor vehicle irrespective of ownership and irrespective of any conduct of the insured.

The insurance company is not unreasonably burdened. In the ordinary automobile liability policy issued to one not subject to the Financial Responsibility Law and covering one described vehicle plus the owner's operation of cars not owned by him, the premium is less than for a policy covering one owned car plus an "operator's policy" issued under Section 139(b). Since the premium for covering one described vehicle is identical in both instances, the higher premium obviously is predicated upon the broader operator coverage required under the statute, namely, coverage of any vehicle operated by the insured, regardless of ownership. We stress that it is solely in reliance upon such broad coverage that the Department of Motor Vehicles is permitted to restore an unrestricted license.

### The Draft of the Uniform Motor Vehicle Act

The history of the legislation supports this view. In 1932 the National Conference of Commissioners on Uniform State Laws drafted an automobile liability security act which required the issuance of both a "motor vehicle liability policy" and an "operator's policy," the latter insuring liability arising out of the operation by the insured of "any motor vehicle." The Commissioners' Prefatory Note, 11 U.L.A., p. 127, declares, in language too plain to be misunderstood, that the Act is designed to require the driver to carry insurance "against liability arising out of his operation of a motor vehicle no matter whose motor vehicle it may be."

While the draft prepared by the Commissioners is not identical with the Maryland Act, it is closely similar in many respects, and substantially identical in regard to the "operator's policy." We are of the opinion that the Maryland Legislature intended to require as stated by the Commissioners, a "policy covering the operator, regardless of the ownership of the car which he is operating * * * in the event of any accident occurring while the insured is at the wheel."

Inland points to the fact that in some cases courts have held that the operator's policies did not cover cars owned by the insured. Employers Liability Assur. Corp. v. Roux, 1953, 98 N.H. 309, 100 A. 2d 416; American Casualty Co. of Reading, Pa. v. Cioffi, 1958, 49 N.J.Super. 6, 138 A.2d 757; Ohm v. Fireman's Fund Indemnity Co., 1957, 211 Or. 596, 317 P. 2d 575. These citations, indeed, point up the fallacy of the insurer's position here, for the financial responsibility laws in those states specifically exclude from the purview of an operator's policy the insured's use of vehicles he owns. Conspicuous in the Maryland statute is the absence of such limitation. The point is illustrated by Booth v. American Casualty Company, 261 F.2d 389, in which this Court held that an operator's policy was consistent with the provisions of South Carolina's Motor Vehicle Safety Responsibility Act, Code of Laws of South Carolina, Sec. 46–701 et seq. Sec. 46–750.23 defines an operator's policy as covering the insured's use "of any motor vehicle *not owned by* him." The Maryland statute, however, in Sec. 139 (b) defines an operator's policy as one "insuring such operator or chauffeur while operating any motor vehicle," without in terms restricting the appli-

cation of an operator's policy to vehicles not owned by the insured. (Emphasis supplied.)

We conclude that at the time of the accident the "Newly Acquired Automobile" clause extended coverage to the 1950 Ford and that, in addition, the "Operators Only Endorsement," as evidenced by the SR22 certificate, extended coverage because Stallings was the operator. The judgment of the District Court is, therefore,

Affirmed.