MONROE COUNTY, Iowa, Appellant,

v.

INTERNATIONAL INSURANCE COMPANY and Mount Airy Insurance Company, Appellees.

No. 98–1145.

Supreme Court of Iowa.

April 26, 2000.

Bernard L. Spaeth, Jr. and August B. Landis of Whitfield & Eddy, P.L.C., Des Moines, for appellant.

Robert G. Allbee and Edward W. Remsburg of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, and Jeffrey A. Goldwater and Carol L. Johnson of Bollinger, Ruberry & Garvey, Chicago, Illinois, for appellees.

CARTER, Justice.

Monroe County, which suffered a substantial tort judgment against it in prior litigation, appeals from a grant of summary judgment in favor of International Insurance Company (International) and Mount Airy Insurance Company (Mount Airy) on the county's claim that those insurers were bound to indemnify it against the claim on which the tort judgment was based. In denying coverage, International and Mount Airy relied on several exclusions in their respective "claims made" policies, some of which the district court found to be applicable. Because we conclude, as did the district court, that a prior litigation exclusion contained in both policies applies to defeat the coverage claimed by Monroe County, we affirm the judgment of the district court on that theory and do not consider the other defenses that have been advanced by the insurers.

A substantial tort judgment was entered against Monroe County in prior litigation

brought by Iowa Coal Mining Company, Star Coal Mining Company, and Jim Huyser. We affirmed much of that judgment in *Iowa Coal Mining Co. v. Monroe County*, 555 N.W.2d 418 (Iowa 1996) (*Iowa Coal II*). That litigation had been preceded by an earlier action that was before this court in *Iowa Coal Mining Co. v. Monroe County*, 494 N.W.2d 664 (Iowa 1993) (*Iowa Coal I*). The damage claim in *Iowa Coal II* was premised on the legal theory that the county had unlawfully and tortiously interfered with a contract that the plaintiffs had made for the landfilling of utility and industrial ash.

In seeking summary judgment on the claims for indemnification brought against them in this action, International and Mount Airy rely on an exclusionary clause contained in the liability policy the county purchased from these companies described as a prior litigation exclusion. It was the theory of the insurers that there was a sufficient relationship between the claims in *Iowa Coal II* and the claims in *Iowa Coal I* to trigger this exclusion under their "claims made" policies. In granting summary judgment, the district court concluded that "there is little question that there is a nexus between the two lawsuits" and ruled that the exclusions precluded coverage. We must determine whether that ruling was correct based on the exclusionary language of the insurance policies and the circumstances of the prior litigation.

The liability insurance policies issued to Monroe County by International and Mount Airy are very similar. Both are public employees and officials liability insurance policies written on a "claims made" basis. The International policy covered claims first made during the period January 1, 1993, to January 1, 1994. The Mount Airy policy covered claims first made during the period January 1, 1994, to January 1, 1995. Both policies contained the following exclusion:

> It is understood and agreed that the insurer shall not be responsible for making any payment for loss in connection with any claim made against any insured based upon, arising out of, in consequence of, or in any way involving:
>
> (1) Any prior and/or pending litigation as of 01/01/92 including but not limited to matters before local, state, or federal boards, commissions, or administrative agencies, or
>
> (2) Any fact, circumstance, or situation underlying or alleged in such litigation or matter.

The *Iowa Coal I* litigation was filed on May 5, 1988, decided in the district court on June 19, 1991, and decided on appeal on January 20, 1993. It thus was clearly pending on the exclusions' operative date of January 1, 1992. In contrast, the *Iowa Coal II* litigation was not commenced until May 7, 1993, well after the operative date of the prior litigation exclusions.

Monroe County urges that the claim for which it seeks indemnification was first made when the *Iowa Coal II* petition was filed on May 7, 1993, while International's policy was in force. In the alternative, it urges that the claim was first made on March 18, 1994, during Mount Airy's policy period when the legal theory of tortious interference with a contract was first injected into the litigation. Although the two insurance companies disagree as to when the claim leading to the county's liability in *Iowa Coal II* was first made, they urge that it does not matter because the recovery is based on facts underlying or alleged in *Iowa Coal I* thus precluding coverage under paragraph (2) of the prior litigation exclusion. We agree.

## I. *Interpretation of the Exclusions.*

In discussing the role of a prior litigation exclusion in "claims made" liability insurance policies, one court has stated:

> "Claims made" insurance policies, as opposed to occurrence-based policies, are intended by insurers to avoid the "hazard of an indefinite future: Once the policy period has expired, the book can be closed on everything except then-

pending claims." On the other hand, an insurer incurs a risk with this kind of policy: liability for "a claim that has been brewing and was ripe to erupt before the policy period, but is asserted only after the policy period begins." For this reason, claims made policies generally include a number of endorsements and exclusions intended to limit this front-end risk by cutting off liability for claims ready, but not yet made, at the start of the policy period.

*Ameriwood Indus. Int'l Corp. v. American Cas. Co.*, 840 F.Supp. 1143, 1148–49 (W.D.Mich. 1993) (citations omitted).

 Construction of an insurance policy—the process of determining its legal effect—is a question of law for the court unless it depends on extrinsic evidence or a choice among more than one reasonable inference. *A.Y. McDonald Indus., Inc. v. Insurance Co. of N. Am.*, 475 N.W.2d 607, 618 (Iowa 1991); *Farm Bureau Mut. Ins. Co. v. Sandbulte*, 302 N.W.2d 104, 107–08 (Iowa 1981). In the construction of insurance policies, the cardinal principle is that the intention of the parties must prevail. If the language of the policy is unambiguous, as the parties concede it is in the present case, that intent is determined by what the policy itself says. *A.Y. McDonald*, 475 N.W.2d at 618. When words in a policy are left undefined, we give them the meaning that a reasonable person would understand them to mean. *Farm & City Ins. Co. v. Potter*, 330 N.W.2d 263, 265 (Iowa 1983). In applying these principles, we believe that phrases like "in any way involving" and "any fact, circumstance, or situation underlying or alleged" must be applied in the same comprehensive manner as they are written. We discern nothing in the language of the exclusions relied on by the district court that requires that a claim, in order to be excluded, must involve the same legal theory, wrongful acts, or requests for relief. On the contrary, these exclusions are phrased in the disjunctive. A claim is excluded if it is based upon or in any way involves any fact, circumstance, or situation underlying or alleged in litigation pending on January 1, 1992, or pursued prior thereto.

The foundation for the tort recovery in *Iowa Coal II* was a contract that the plaintiffs in that action had with a company known as Metro Waste to transport the latter's incinerated sewage sludge ash to a landfill site controlled by those plaintiffs. Evidence was presented that, if the county had not sought to block this arrangement by improper means, the transaction would have produced an $850,000 profit to the entities controlling the landfill site. The jury's verdict for the plaintiffs in *Iowa Coal II* was exactly $850,000.

In an amendment to the petition against Monroe County in *Iowa Coal I*, filed on October 25, 1988, it was alleged in paragraph (14) of Count I:

> By reason of the actions taken by Monroe County, Plaintiffs have sustained damages in the following respects and particulars, to-wit:
>
> A. Plaintiffs incurred significant out-of-pocket expenses in preparing for a particular use of their land which is no longer authorized under the Monroe County Zoning Ordinance.
>
> B. Plaintiffs will be unable to proceed with the planned use of their property in Monroe County, and will sustain future loss of profits and business value.

It was further alleged in paragraph (3) of Count II:

> By reason of the actions taken by Monroe County, Plaintiffs have sustained damages in the following respects and particulars, to-wit:
>
> A. Plaintiffs incurred significant out-of-pocket expenses in preparing for a particular use of their land which is no longer authorized under the Monroe County Zoning Ordinance.
>
> B. Plaintiffs will be unable to proceed with the planned use of their property in Monroe County, and will sustain future loss of profits and business value.

Based on these allegations, the plaintiffs sought money damages from the county in both counts of the amended petition. During the litigation, evidence was presented that showed that the planned use of the plaintiffs' property included the contract with Metro Waste on which the tortious interference claim in *Iowa Coal II* was based. Moreover, part of the future loss of profits and business value sought to be recovered in *Iowa Coal I* were tied to the loss of the Metro Waste contract. Although the damages claimed in *Iowa Coal I* were based on a different legal theory than the claim on which plaintiffs prevailed in *Iowa Coal II*, it seems inescapable that the latter involved facts, circumstances, and situations underlying or alleged in the former. We expressly acknowledged this in our *Iowa Coal II* opinion in which we stated:

> [Although] [n]one of these issues [the tortious interference claim] were litigated in *Iowa Coal I*... there was evidence before the district court in the first action from which the court could find the County interfered with this prospective contractual relationship.

*Iowa Coal II*, 555 N.W.2d at 443.

## II. *Reasonable Expectations.*

■ As a backup argument, Monroe County asserts that irrespective of the interpretation placed on the prior litigation exclusion it was entitled to expect liability coverage for the *Iowa Coal II* judgment under the doctrine of reasonable expectations. The doctrine of reasonable expectations is more than a rule of interpretation. It seeks to avoid the frustration of an insured's expectations notwithstanding policy language that appears to negate coverage. It is a narrow doctrine that is primarily employed when the insurance coverage provided eviscerates terms explicitly agreed to or is manifestly inconsistent with the purpose of the transaction for which the insurance was purchased. *Sandbulte*, 302 N.W.2d at 112; *C & J Fertilizer, Inc. v. Allied Mut. Ins. Co.*, 227 N.W.2d 169, 176 (Iowa 1975). We have

recognized, however, that the doctrine will not be applied to cases in which an ordinary layman would not misunderstand the extent of the coverage provided from a reading of the policy and there are no circumstances attributable to the insurer that would foster coverage expectations beyond that which is provided. *Rodman v. State Farm Mut. Auto. Ins. Co.*, 208 N.W.2d 903, 906 (Iowa 1973). We conclude that this was the situation with respect to Monroe County's expectations in the present case. The county has not made a case for avoiding the plainly written exclusion contained in the International and Mount Airy policies.

We have considered all issues presented and conclude that the judgment of the district court should be affirmed.

**AFFIRMED.**

All justices concur except LAVORATO and TERNUS, JJ., who take no part.