**GRINNELL SELECT INSURANCE CO., Appellant,**

v.

**CONTINENTAL WESTERN INSURANCE COMPANY and/or Continental Western Casualty Company, Appellee.**

No. 99–1798.

Supreme Court of Iowa.

Jan. 24, 2002.

Richard D. Stochl of Elwood, O'Donohoe, O'Connor & Stochl, New Hampton, for appellant.

Frederick G. White of White Law Office, Waterloo, for appellee.

NEUMAN, Justice.

This is a dispute between insurers over the coverage afforded—or not afforded—under an auto insurance policy. The district court denied recovery by appellant, Grinnell Select Insurance Co. (hereinafter "Grinnell"), against appellee, Continental Western Insurance Company (hereinafter "Continental Western"), based on a provision in Continental Western's policy that excludes liability coverage for any person "[u]sing a vehicle without a reasonable belief that that person is entitled to do so." Although we disagree with the court's rationale, we agree the policy affords no coverage. We therefore affirm.

## I. Background Facts and Proceedings.

Continental Western issued a personal auto insurance policy to Darlene Kapping for the period March 11, 1992 to September 11, 1992. The "covered auto" named on the declarations page of the policy was Darlene's 1979 Mercury Marquis. At the time the policy was issued, Darlene's seventeen-year old daughter, Darcy, lived with her and, from time to time, drove the Mercury.

Darlene died in July 1992. Darcy continued to drive the vehicle during the policy period. On August 28, 1992, while driving four friends to a dance, Darcy let one of her passengers, Jason Jepperson, take the wheel on a gravel country road. Jason drove the Mercury at a high rate of speed and failed to stop at an intersection, colliding with another vehicle and seriously injuring its passengers.

Amy Schwartzhoff, one of the injured passengers in the other vehicle, sued Jepperson. Jepperson had no insurance, and Continental Western denied coverage under the Kapping policy, so Schwartzhoff proceeded against her uninsured motorist carrier, Grinnell. Grinnell named Darcy Kapping as a third-party defendant. The suit ultimately ended in a $135,700 judgment in Schwartzhoff's favor against Grinnell, and a similar judgment in favor of Grinnell and against Darcy on the third-party petition.

That brings us to the present controversy. After Grinnell satisfied its obligation to Schwartzhoff, and after unsuccessfully executing on the property of Darcy Kapping, it commenced this direct action against Continental Western under Iowa Code section 516.1 (1997). Grinnell claimed that Darcy, as an insured under the policy issued by Continental Western to Darlene Kapping, authorized Jepperson to drive the vehicle, thereby obligating Continental Western to the extent of its $50,000 policy limits for damages sustained by Schwartzhoff and paid by Grinnell. Continental Western denied coverage, challenging Darcy's insured status under the policy and urging that, even if Darcy were insured, the consent she gave Jepperson was revoked before the accident. The district court found in favor of Continental Western on the latter ground, and this appeal by Grinnell followed.

Further facts will be detailed as they relate to the issues on appeal.

## II. Scope of Review.

Because this action was tried at law, our review is on assigned errors only. At issue is the construction and interpretation of the auto liability policy issued by Continental Western. Construction of a contract involves the determination of its legal effect, always a question of law. *LeMars Mut. Ins. Co. v. Joffer*, 574 N.W.2d 303, 307 (Iowa 1998). Interpretation—discerning the meaning of contractual language—is likewise a question of law for the court unless the meaning of disputed terms turns on extrinsic facts or choices among reasonable inferences. *Id.* at 306.

Thus we are not bound by the district court's conclusions regarding the construction of the Continental Western policy but, to the extent its interpretation of contractual terms depends on extrinsic evidence, we are bound by those factual findings supported by substantial evidence in the record. *Hartig Drug Co. v. Hartig*, 602 N.W.2d 794, 797 (Iowa 1999).

### III. The Policy.

The ultimate question on appeal is whether the judgment against Darcy for the accident caused by Jason Jepperson is covered by the Continental Western policy. We begin our analysis by looking at the policy's provisions.

According to the insuring agreement, Continental Western "will pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident." The term "insured" has three contractual meanings pertinent here:

1. You [the named insured] or any "family member" for the ownership, maintenance or use of any auto or "trailer."

2. Any person using "your covered auto."

3. For "your covered auto," any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

Darlene Kapping was the named insured on the policy. "Family member" as defined by the policy is "a person related to you [the named insured] by blood, marriage or adoption *who is a resident of your household*." (Emphasis added.) "Your covered auto" means "[a]ny vehicle shown in the Declarations," i.e., the 1979 Mercury Marquis.

Two other policy provisions are arguably pertinent to our analysis. First, the contract contains an exclusion from liability coverage "for any person ... [u]sing a vehicle without a reasonable belief that that person is entitled to do so." Second, under the heading "TRANSFER OF YOUR INTEREST IN THIS POLICY," the contract states:

Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto."

At this point, we think some fundamental observations about these policy provisions deserve comment. First, the named insured and qualified family members are insured under the Continental Western policy for the use of *any* auto. Pertinent to this appeal, the policy also provides coverage for *any* person, but only while using the "covered auto." Thus, irrespective of whether Darcy was a member of Darlene's household on the date of the accident, she fit the definition of "[a]ny person using [the] 'covered auto.' "[1] And,

---

1. The record reveals that around the end of August 1992, Darcy moved from the rented residence she had shared with her mother to an apartment of her own. Both in district court and on appeal, the parties devote much attention to Darcy's precise address on the date of the accident and the separate but related question of whether she continued to

while driving the Mercury, so did Jason Jepperson. The question is whether other factual or legal obstacles prevent coverage, a matter to which we now turn.

## IV. Consent.

█ The district court rested its judgment for Continental Western on a finding that at the time of the accident, "Jason no longer had a reasonable belief that he was entitled to use the car." So, the court concluded, Jason's conduct came within the exclusion from coverage under the policy. On appeal, Grinnell contests the legal and factual bases for this conclusion. For the reasons that follow, we find Grinnell's argument persuasive.

To begin, we must relate some additional facts. Darlene died intestate and without a surviving spouse. So title to what little property she owned, including the Mercury, vested immediately in her three daughters, including Darcy. *See Sanderson v. Kisner*, 477 N.W.2d 96, 98 (Iowa 1991) (ownership and title to vehicle passes immediately to heirs-at-law on death). Darcy, as the new one-third owner of the Mercury, inherited not only the responsibility for its operation but the right to consent to its use. *See* Iowa Code section 321.493 (fixing liability for damages on owner when motor vehicle operated with owner's consent).

█ There is no dispute under this record that Darcy consented to Jason's operation of the Mercury on the night of the accident. The question is whether at some point Darcy revoked her consent.[2] The answer turns, as a matter of law, on

whether Darcy's direction to Jason evinced her intent to terminate his driving privilege or merely sought to control his manner of driving. The distinction is a crucial one, as this court has observed:

An owner can limit [her] liability for the negligence of the driver of [her] motor vehicle by making [her] consent conditional. By prescribing the time, place, or purpose for which the vehicle can be used, the owner can escape liability if the driver deviates materially from the scope of the consent. However, the owner generally cannot avoid such liability for a mere deviation from instruction on the manner which the vehicle is used. For example, the owner cannot escape liability by stating that if the driver exceeds the speed limit he is then driving without permission. Any other conclusion would allow the owner to escape liability in nearly every case by showing that some authority was violated.

We conclude that under section 321.493 it is justifiable to distinguish violations of restrictions on time, place, or purpose of the use of the vehicle from a restriction on manner of use. The purpose of the statute is to protect an innocent third party from the careless operation of a motor vehicle and to make the owner responsible for the negligence of one to whom the owner entrusted its operation. This entrustment can reasonably be conditioned on time, place, or purpose without undermining the purpose of section 321.493. However, if we allowed the owner to terminate [her] consent solely on the basis of the manner of driving we would subvert the purpose of the statute.

---

be a member of Darlene's "household" following Darlene's death. Given the insuring agreement that provides coverage for "any" person using the "covered auto," we think Darcy's status as a member of Darlene's household on the date of the accident is largely irrelevant.

**2.** We address this question because the parties have framed the appeal this way. We entertain some doubt as to whether or not Jason's belief about his driving privilege is relevant to the case. It is *Darcy's* coverage that is at issue.

*Briner v. Hyslop,* 337 N.W.2d 858, 869–70 (Iowa 1983) (citations omitted.)

Here, the district court concluded that Jason should have known he no longer had authority to use the Mercury when Darcy began "hitting him and telling him to stop." The problem with the court's reliance on this one deposition statement by Darcy is that it completely overlooks the context in which it was made. There is no dispute that Darcy asked Jason to drive the car because she preferred not driving on gravel roads. The record reveals that the group was in a hurry to get to the dance. Jason, however, drove faster on the gravel than the other passengers thought he should. He evidently ignored their requests to slow down. When the passengers saw a car approaching the intersection ahead they all yelled at Jason to stop but it was too late. As Jason tried to stop, the car began fishtailing. So one or more of the passengers urged him to "floor it" in an attempt to avoid the oncoming car. That maneuver was unsuccessful and so the collision occurred.

Considered in context, Darcy's direction to Jason was not "stop, pull over, you are done driving." It was a frantic "stop at the stop sign ahead because a car is coming the other way." This was not a "time, place or purpose" restriction on his driving. It was a last-ditch attempt to impact Jason's *manner* of driving. The district court erred in failing to draw this distinction. *See id.* at 870 (allowing owner to terminate consent solely due to manner of driving would subvert owner consent statute). Because its decision cannot stand on this ground, we turn to the other arguments urged in support of the judgment.

## V. Coverage after Death of Named Insured.

■ Continental Western argues that even if the district court erred on the consent issue, its decision may be upheld because coverage after death of the named insured would in any event be limited to a surviving spouse or the decedent's legal representative. Grinnell counters that even if that is the general rule, the doctrine of reasonable expectations would have permitted the court to find coverage for Darcy under this record. We are convinced Continental Western has the better argument.

■ It is indeed the general rule that, in the absence of language to the contrary, an automobile liability policy terminates with the death of the named insured. *Oroian v. Allstate Ins. Co.,* 62 Md.App. 654, 490 A.2d 1321, 1323 (1985); *Wilkins v. Inland Mut. Ins. Co.,* 253 F.2d 489, 490 (4th Cir.1958); *see generally* 7 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 110:7, at 110–14 (3d ed. 2000 Supp.) [hereinafter *"Couch"*]; 7 Am. Jur.2d, *Automobile Insurance* § 12, at 456 (1980); P.G. Guthrie, Annotation, *Automobile Insurance: Coverage as Extending Beyond Death of Named Insured,* 30 A.L.R.3d 1047, 1073 (1970).

As the court noted in *Wilkins,* however, insurers tend to recognize the "preoccupations of bereavement" by including policy language extending coverage under limited circumstances following death. *Wilkins,* 253 F.2d at 491. Continental Western concedes that is the case here. But while the policy discussed in *Wilkins* (and others cited by the treatises) includes coverage for "any person having proper temporary control and custody of the vehicle," *see id.,* the policy before us extends coverage in only two circumstances: to a surviving spouse who is resident of the same household at the time of death and to the deceased's legal representative.

As found by the district court, the record before us reveals no facts obligating

Continental Western under the extended coverage provisions of the Kapping policy. Darlene Kapping was a divorced person who died without a surviving spouse. Moreover, she had no will and her modest estate evidently warranted no administration. Thus, at the time of the accident, no one had been officially appointed "legal representative" of her intestate estate. *Cf. Federated Mut. Implement & Hardware Ins. Co. v. Eng*, 178 N.W.2d 321, 324 (Iowa 1970) (deceased's auto policy covered executor while driving on estate business).

We note that at least one court has found the term "legal representative" to have "no fixed meaning in the law" and therefore sufficiently broad to include a sole heir not yet appointed administrator. *See Merchant's Mut. Cas. Co. v. Egan*, 91 N.H. 368, 20 A.2d 480, 482 (1941) (where policy language inconsistent with statute, spouse qualifies as "legal representative" prior to appointment during term of policy). Such a broad reading of Continental Western's policy, however, would not avail Darcy or Grinnell here. Neither Darcy nor her consent driver was using the vehicle for anything remotely involving "estate" business. At the time of the accident, they were on their way to a dance. We know of no case permitting qualification under the extended-coverage provision in these circumstances. *Compare Eng*, 178 N.W.2d at 324 (finding coverage where executor operating vehicle to collect sales price for hogs owned by estate), *with Oroian*, 490 A.2d at 1325 (no coverage for executor's consent driver who operated estate pickup on personal business).

 Grinnell nevertheless claims the district court properly applied the reasonable expectations doctrine to reach the consent issue and avoid this "unjust result." We are not so convinced. The doctrine is a narrow one, employed by courts only "when the insurance coverage provid-

ed eviscerates terms explicitly agreed to or is manifestly inconsistent with the purpose of the transaction for which the insurance was purchased." *Monroe County v. Int'l Ins. Co.*, 609 N.W.2d 522, 526 (Iowa 2000). Applicability of the doctrine turns on proof that (1) an ordinary layperson would misunderstand the policy's coverage, or (2) circumstances attributable to the insurer fostered coverage expectations. *Krause v. Krause*, 589 N.W.2d 721, 728 (Iowa 1999); *Benavides v. J.C. Penney Life Ins. Co.*, 539 N.W.2d 352, 357 (Iowa 1995).

 The district court recognized the record contains no proof whatsoever concerning Darlene's purchase of the policy or her coverage expectations. It decided, however, that an ordinary person would expect an insurance policy naming a particular vehicle to provide coverage throughout the policy period despite the named insured's death. The problem with the court's reasoning is that it overlooks plain language in the policy to the contrary, as well as settled law. Neither payment of the premium for the full term nor continued use of the vehicle consistent with the named insured's former practice will burden an insurer, on equitable grounds, with coverage outside the contract's terms. *Collins v. Northwest Cas. Co.*, 180 Wash. 347, 39 P.2d 986, 990 (1935); *see* 7 *Couch* § 110:7, at 110–14 (fact that premium has been paid for full term does not, on equitable grounds, permit extension of coverage beyond insured's death during policy term).

## VI. Conclusion.

In short, the district court was right for the wrong reason. The record does not support the court's application of the reasonable expectations doctrine to find coverage for Darcy and her consent driver, so

the court should not have reached the consent issue. Grinnell fails in its bid to recover from Continental Western because, upon the death of Continental Western's named insured, neither Darcy nor anyone else qualified as an insured under the extended coverage provision of the policy. We therefore affirm the district court's judgment for Continental Western.

**AFFIRMED.**