16 A.3d 1008

**MARYLAND AUTOMOBILE INSURANCE FUND**

v.

**Charles JOHN, et al.**

**No. 2028, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

April 1, 2011.

Lawrence L. Wesker, Gaithersburg, MD, for appellant.

Bret A. Buckwalter (Niles, Barton & Wilmer, LLP, on the brief), Baltimore, MD, for appellee.

Panel: EYLER, JAMES R., WRIGHT, ARRIE W. DAVIS, (Retired, specially assigned), JJ.

EYLER, JAMES R., J.

Charles John filed a civil tort action against Doreen Ashu ("Doreen") in the District Court of Maryland in Prince George's County for injuries that Mr. John sustained in an automobile accident with Doreen. Because Doreen's presumed insurer, Progressive American Insurance Company,

appellee, denied coverage, Mr. John also named his own insurance provider, the Maryland Automobile Insurance Fund ("MAIF"), appellant, as a defendant. Appellant's insurance agreement with Mr. John provided Uninsured Motorists ("UM") coverage in the event that Mr. John was injured in an automobile accident caused by an uninsured motorist.

To determine coverage, Mr. John brought a separate declaratory judgment action in the Circuit Court for Prince George's County against Doreen, appellant, and appellee. Mr. John sought a declaration that appellee was required to cover the accident, or alternatively, that appellant was required to provide coverage under Mr. John's own UM policy. The initial tort case was stayed pending the outcome of the declaratory judgment action.

A bench trial in the declaratory judgment action was held on July 7, 2009. At trial, appellee claimed that its policy, which had been issued to Doreen's sister, Patricia Ashu ("Patricia"), who had died a year before the accident, did not cover Doreen. Appellant countered that, after Patricia's death, one of appellee's insurance agents represented to Doreen that she was covered and accepted several premium payments for that coverage.

On September 25, 2009, the court issued a written order and opinion concluding that appellee was not obligated to insure Doreen. Appellant noted a timely appeal to this Court[1].

### Factual Background

Patricia obtained an insurance policy issued by appellee. The policy covered her vehicle for the period of March 29, 2005 to September 29, 2005. Patricia died on May 4, 2005. At the time of Patricia's death, Doreen was living in Patricia's household and using Patricia's vehicle.

Two days after Patricia's death, Doreen met with Emmanuel Fomukong, one of appellee's insurance agents. She relayed the news of Patricia's death to Mr. Fomukong and asked him

---

1. Mr. John and Doreen did not participate on appeal.

to translate Patricia's Cameroonian death certificate to English. Mr. Fomukong did so. Doreen explained to Mr. Fomukong that she wished to continue driving her late sister's vehicle and would like to keep appellee's insurance on it. Mr. Fomukong told Doreen that, until ownership of the car was transferred to her, she could continue driving Patricia's vehicle with continued coverage by appellee, provided that all necessary premiums were paid.

Payments for the premiums were deducted from Patricia's bank account until the account was depleted. At that point, on or about September 10, 2005, Doreen met again with Mr. Fomukong. They made arrangements for the insurance coverage to continue and for Doreen to pay the premiums by check, and, if necessary, by direct withdrawal from Doreen's bank account. Doreen made all subsequent payments by check, except one, which was withdrawn electronically from her account.

Thereafter, appellee issued a renewal of the policy covering the period of September 29, 2005 to March 29, 2006, and a second renewal covering the period of March 29, 2006 to September 29, 2006. The declaration pages for both renewals, like the declaration page for the original policy, list "Fomukongs Ins Group" as the agent. Doreen paid all the premiums associated with those policy renewals.

On August 21, 2006, Mary Tabot was appointed as the personal representative of Patricia's estate. Ms. Tabot is a distant relative of Patricia and Doreen Ashu, and was asked by Doreen to serve as personal representative because Doreen could not obtain a personal representative bond due to her lack of United States' citizenship.

On September 25, 2006, Doreen was involved in a motor vehicle accident with Mr. John while Doreen was driving Patricia's vehicle. Doreen had been returning home after dropping a friend off at the friend's house.

Additional facts are incorporated as necessary in the discussion below.

## Standard of Review

Our review of this case is guided by Maryland Rule 8–131(c), which provides that:

When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

## Discussion

Appellant raises three arguments on appeal: (1) the court erred in failing to find an oral contract between appellee and Doreen; (2) the court erred in failing to find that appellee is estopped from denying coverage to Doreen; and (3) public policy requires appellee to honor its promise of coverage to Doreen. Appellee contends that there is no coverage under the plain language of its insurance policy and the court did not err in its findings and conclusions. Before addressing, and ultimately rejecting, appellant's contentions, we first consider whether Doreen was covered under the language of the written insurance policy. The circuit court was correct in concluding that there was no coverage under appellee's policy. We disagree with the reasoning advanced by appellee, however, and will explain. Ultimately, we perceive no reversible error, and shall affirm.

### 1. *Coverage Under the Written Policy*

Both the initial insurance policy and the two renewals were in Patricia's name only. "Absent a policy provision extending coverage, an automobile liability policy lapses on the death of the named insured." *Oroian v. Allstate Ins. Co.*, 62 Md.App. 654, 659, 490 A.2d 1321 (1985) (citing R. Anderson, *Couch Cyclopedia of Insurance Law* § 39.243 (2d ed.1962)). Appellee's policy contained such a policy provision—the "transfer provision"—which provided as follows:

This policy may not be transferred to another person without our written consent. If a named insured dies, this policy will provide coverage until the end of the policy period for the legal representative of the named insured, while acting as such, and for persons covered under this policy on the date of the named insured's death.

Appellee never agreed in writing to transfer Patricia's policy to Doreen. Further, due to her lack of United States citizenship, Doreen was never appointed legal representative (*i.e.,* personal representative) of Patricia's estate. The only remaining question thus becomes whether Doreen can glean coverage as a "person[ ] covered under [the] policy" (*i.e.,* an additional insured) at Patricia's death.

Appellee argues that "the coverage provided by the policy was limited to the legal representative of the Estate while operating the covered vehicle on behalf of the Estate," and "on the date of the underlying accident, the policy provided coverage for Ms. Tabot when she was operating the vehicle on Estate business, but it did not provide coverage to Doreen Ashu to operate the vehicle for her own purposes." We disagree and conclude that, between the time of Patricia's death and the end of the initial policy term, Doreen was indeed a "person[ ] covered under [the] policy." The policy's definition of "insured person" and "insured persons" includes "[the named insured] or a relative with respect to an accident arising out of the ownership, maintenance, or use of a covered vehicle." The policy then defines "relative" as "a person residing in the same household as [the named insured], and related to [the named insured] by blood, marriage, or adoption, including a ward, stepchild, or foster child....." First, Doreen and Patricia were blood relatives. Second, Doreen had been living with Patricia prior to Patricia's death, and was living in Patricia's house both at the time of the death and following the death. Doreen testified [2] that she moved to this

---

2. Doreen was the only witness to testify at trial, and the trial court found her testimony credible. We defer to that finding. *See* Maryland Rule 8–131(c) ("When an action has been tried without a jury, the

country from Cameroon in January, 2004. Upon arrival, Doreen moved into Patricia's house, and lived there with Patricia and Patricia's son. Doreen lived there until May 2004, when the sisters had some disagreements. At that time, Doreen moved out of the house, but for no longer than two months. She then moved back in with Patricia. At one other time in 2005, Doreen moved out for a brief period, but returned again. Doreen was living in Patricia's house when Patricia died, although Patricia died in Cameroon. Before leaving for her trip to Cameroon, Patricia gave Doreen her car keys, knowing that Doreen would need to drive Patricia's son around. Doreen continued to live in Patricia's house after Patricia's death, and was living there at the time of the accident.

Nevertheless, appellee contends that *Oroian v. Allstate Ins. Co.*, 62 Md.App. 654, 490 A.2d 1321 (1985), in which this Court denied coverage under similar policy language, controls the question of coverage in this case. In *Oroian*, the named insured on an automobile insurance policy died. *Id.* at 656, 490 A.2d 1321. The decedent's sister was named personal representative of the decedent's estate. *Id.* The sister permitted Oroian, a close family friend, to take possession of the covered vehicle for the purpose of keeping it in proper shape until it was appraised for estate purposes. *Id.* at 660, 490 A.2d 1321. Oroian was involved in an accident while driving the vehicle for personal purposes (not for any estate-related purposes). *Id.* The decedent's insurer denied coverage under the following provision:

> ... if the named insured, or his spouse as a resident of the same household, shall die, this policy shall cover:
>
> (a) the survivor as named insured;
>
> (b) his legal representative as named insured but only while acting within the scope of his duties as such; and

---

appellate court ... will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.").

(c) with respect to an owned automobile, any person having proper temporary custody as insured, until the appointment and qualification of such legal representative.

*Id.* at 656, 659, 490 A.2d 1321. The *Oroian* Court found that only paragraph (b) was applicable. *Id.* at 659, 490 A.2d 1321. Paragraph (c) was inapplicable because the accident occurred after the sister was appointed as personal representative. *Id.* The Court explained that the policy terms would permit coverage if it was proven that the sister had given Oroian permission to use the vehicle, and that Oroian's use of the vehicle was within the scope of the sister's duties as personal representative. *Id.* at 660–61, 490 A.2d 1321. Because Oroian was using the car for personal reasons, the latter condition failed, and the Court found no coverage. *Id.* at 663, 490 A.2d 1321.

The Iowa Supreme Court held similarly, in what appears to be the only other reported case on point, *Grinnell Select Ins. Co. v. Continental Western Ins. Co.*, 639 N.W.2d 31 (Iowa 2002). In *Grinnell*, the named insured on an automobile insurance policy died. *Id.* at 33. The named insured's daughter continued driving the covered vehicle during the policy period. *Id.* While driving friends to a dance, the daughter allowed one of the passengers to take the wheel. *Id.* The passenger crashed the vehicle, injuring persons in another car. *Id.* The insurance company denied coverage under the following "transfer" provision:

Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death . . . .; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use '[the] covered auto.'

*Id.* at 34. The court found that, even assuming that the term "legal representative" could be interpreted to include the daughter, and that the passenger was driving with the daughter's consent, "neither [the daughter] nor her consent driver was using the vehicle for anything remotely involving 'estate' business." *Id.* at 37. The court thus concluded that the decedent's insurance policy did not cover the accident. *Id.* at 37–38.

The case *sub judice* is factually distinct from both *Oroian* and *Grinnell.* The cases do not stand for the general proposition that, after the death of a named insured, coverage is limited to the personal representative of the decedent and/or that it is limited to the operation of a vehicle, that is otherwise insured, on estate business. The language of the policy in question controls. The plain language of the transfer provision in the policy here provides coverage "until the end of the policy period" for two separate types of persons: (1) "the legal representative of the named insured, while acting as such;" [3] and (2) "persons covered under this policy on the date of the named insured's death." Notably, the phrase "while acting as such" applies only to the legal representative—not to other "persons covered." Under the policy at bar, additionally insured persons need not qualify as personal or legal representatives to obtain coverage, as they must under the policy in *Grinnell.* Rather, additional "persons covered" are set forth as a distinct type of covered person. The plain language of the policy thus indicates that an additional "person[ ] covered" need not be acting within the legal representative's scope of duty in order to be covered. Neither are "persons covered" restricted to "temporary custody . . . until the appointment . . . of [a] legal representative," as they are under the policy in *Oroian.* Here, "persons covered" are covered irrespective of the existence of a legal representative. Thus, Doreen's per-

---

**3.** We construe the phrase "while acting as such" to mean acting within the scope of the personal representative's duties as personal representative. That interpretation is consistent with the restrictions on personal representative coverage set forth in the second paragraphs of the *Oroian* and *Grinnell* provisions.

sonal use of the vehicle was covered immediately following Patricia's death.

■ However, under the plain language of the provision, Doreen's coverage lapsed at "the end of the policy period," on September 29, 2005. A case from the Court of Appeals of Texas, *Nielson v. Allstate Ins. Co.*, 784 S.W.2d 735 (Tex.App. 1990), is instructive in this regard. There, in November 1978, a named insured purchased an automobile insurance policy, which, by its written terms, could not be assigned without the insurance company's written consent. *Id.* at 736. Upon the insured's death, however, coverage would extend to the legal representative until the end of the policy period. *Id.* The named insured died in March of 1979. *Id.* The insurance company "received renewal premiums for the policy and automatically renewed the policy in November of 1979 and 1980, but ... was not apprised of [the named insured's] death." *Id.* In July of 1981, a driver was involved in an accident while operating the decedent's vehicle with permission from the decedent's personal representative. *Id.* The court in *Nielson* held that, even if the driver was covered in the initial policy period as an extension of the personal representative,

> the section of the insurance contract granting [such coverage] concludes by stating that coverage will only be provided until *the end of the policy period.* Where the terms of an insurance policy are plain, definite, and unambiguous, the courts cannot vary these terms.

*Id.* (internal quotations and citations omitted) (emphasis added).

Plain language aside, it defies common sense that "persons covered" after the named insured's death could continue to be covered under automatic renewals in the name of the deceased person. Although the general rule is that automobile insurance policies terminate upon the death of the named insured, *Oroian,* 62 Md.App. at 659, 490 A.2d 1321, insurance companies, recognizing the "preoccupations of bereavement," tend to include provisions, such as the one here, that extend temporary coverage under limited circumstances following death.

*Grinnell,* 639 N.W.2d at 36. Such coverage is necessarily temporary and limited because automobile insurance contracts and premium rates are based upon the named insured's risk—not the risk of the temporary driver.

Thus, we conclude that Doreen was covered during the initial policy period, but was not covered at the time of the accident, which occurred two renewal periods later.

### 2. Existence of a New Oral Contract or an Oral Modification of the Policy

Before explaining why appellant's argument in favor of an oral contract fails, we address the question of whether Mr. Fomukong was an authorized agent of appellee. For the reasons that follow, we shall assume that he was.

The question of agency was raised in circuit court but not directly addressed. At trial, appellant noted "that this is not even a question of [apparent] agency, it's actual agency." Appellant also contended that the fact that Progressive deducted money from Doreen's account indicated that Mr. Fomukong was a Progressive agent—not some "rogue agent." Appellant never introduced any evidence to satisfy the elements of agency, but appellee never challenged appellant's position. The debate at trial focused on the legal question of whether an oral agreement could trump a written policy—not the factual question of whether Mr. Fomukong was authorized to make an oral agreement. Indeed, appellee referred to Mr. Fomukong as "the Progressive agent" throughout trial. The trial court's opinion refers to Mr. Fomukong as "Progressive's insurance agent," thereby explicitly assuming Mr. Fomukong's authorization. Accordingly, we, too, shall assume that Mr. Fomukong was an authorized agent.

We turn now to appellant's argument on appeal that, whatever the coverage under the written policy, the conversation between Doreen and Mr. Fomukong two days after Patricia's death constituted a new oral contract that insured Doreen for the use of Patricia's vehicle, on the same terms as those that were contained in Patricia's policy. Appellant

argues further that the two renewals were simply renewals of the "new" contract between Doreen and appellee. While it is unclear whether appellant made that argument at trial, we will give it the benefit of the doubt. Appellant claimed that the fundamental elements of a new contract, "the basic offer and acceptance [and] consideration," had been met. Specifically, appellant contended that "[Doreen] offered money to [appellee], the agent assured her that she . . . would be covered . . . she paid the money, [and] they accepted the money." At other points during the trial, appellant made another, conceptually distinct argument: that the conversation *modified,* rather than *replaced,* the written policy (*e.g.,* "What essentially is going on here is that the policy essentially has changed because the agent is saying you can go ahead and drive this car.").

Whatever the precise argument, the trial court did not accept it. In order to show an oral *modification* of the written policy, appellant would have had to produce persuasive evidence that both parties (1) intended to modify the terms, and (2) understood that they were waiving the policy's prohibition against oral contract modifications. *See Freeman v. Stanbern Const. Co.,* 205 Md. 71, 79, 106 A.2d 50 (1954). The policy's prohibition provided:

> This policy . . . contains all the agreements between you and us. Subject to the following, its terms may not be changed or waived except by an endorsement issued by us.

█ Likewise, to establish that a *new* oral contract was formed, appellant would have had to produce persuasive evidence that the agent indicated that the old contract was being rejected in favor of a new contract with the same written terms as the old one. The trial court found neither a new nor a modified contract. Rather, the court characterized Mr. Fomukong's oral assurances as nothing more than an *interpretation* of Patricia's existing policy. The court then noted that, although the agent's interpretation was incorrect, "Maryland courts have long held that the language of an insurance

policy are [sic] binding, even when contrary to the representations or knowledge of the insurer's agent."

The court's findings were far from clearly erroneous. The record shows no evidence that the parties intended to invalidate Patricia's initial policy in favor of a new policy with the same terms. Likewise, no evidence suggests that both parties intended to waive the prohibition on oral modifications and orally revise the written terms. The only appropriate characterization of the agent's words is the trial court's characterization, which, again, is that the agent incorrectly interpreted Patricia's policy as covering Doreen so long as the premiums were paid.

The agent's misinterpretation was unfortunate, but not sufficient to change the policy's plain terms. *See, e.g., Twelve Knotts Ltd. P'ship v. Fireman's Fund Ins. Co.*, 87 Md.App. 88, 103–04, 589 A.2d 105 (1991) (rejecting an insured's argument that an insurance agent falsely told him that his premiums would not increase, and holding that "[i]t is the obligation of the insured to read and understand the terms of his insurance policy. . . . If the terms of the policy are inconsistent with his desires, he is required to notify the insurer of the inconsistency and of his refusal to accept the condition" (citing *Shepard v. Keystone Ins. Co.*, 743 F.Supp. 429, 432 (D.Md. 1990))); *Cooper v. Berkshire Life Ins. Co.*, 148 Md.App. 41, 75, 810 A.2d 1045 (2002) (stating in a case where insurance agents misrepresented to an insured that he would only have to pay premiums for ten years that insureds "cannot rely on representations made by an insurance agent in a suit against the insurance company when the policy contains clearly inconsistent terms"). To the extent that Doreen was in fact an insured when she spoke with the agent—and we conclude that she was—she had a duty to read the policy, including the transfer clause. Therefore, it is of no moment that the agent's interpretation was inconsistent with that clause.

*3. Estoppel*

Next, appellant argues that appellee is estopped from denying coverage because it accepted premium payments for

over a year and twice renewed the policy after being informed of Patricia's death.[4]  We disagree.

Under Maryland law, "waiver or estoppel may occur only when it does not create new coverage; an extension of coverage may only be created by a new contract." *E.g., Sallie v. Tax Sale Investors,* 149 Md.App. 141, 147, 814 A.2d 572 (2002) (internal quotations and citations omitted).  In other words,

> if the loss was not within the coverage of the policy contract, it cannot be brought within that coverage by invoking the principle of waiver or estoppel.  Waiver or estoppel can only have a field of operation when the subject matter is within the terms of the contract.

*Prudential Ins. Co. v. Solomon Brookman,* 167 Md. 616, 620, 175 A. 838 (1934) (internal quotations and citations omitted).

Maryland's prohibition on coverage by estoppel dismantles appellant's analogy to *Progressive Casualty Ins. Co. v. Ehrhardt,* 69 Md.App. 431, 518 A.2d 151 (1986).  In *Ehrhardt,* the named insured failed to make a timely payment before his motorcycle insurance expired.  *Id.* at 436, 518 A.2d 151.  Six days after the policy lapsed, the named insured was involved in a motorcycle accident.  *Id.*  The next day, the named insured's mother informed the insurance company of the accident, and his father paid the renewal premium.  *Id.* at 436–37, 518 A.2d 151.  The insurance company's lead underwriter backdated the renewal to the end of the expired term.  *Id.* at 437, 518 A.2d 151.  The *Ehrhardt* Court held that the insurance company waived its ability to assert non-coverage because, although it could have exercised its right to forfeit the policy, it backdated the coverage with full knowledge of the accident.  *Id.* at 444, 447, 518 A.2d 151.

The case at bar is readily distinguishable.  In *Ehrhardt,* there was no question as to whether, absent forfeiture, the

---

4.  Assuming the underwriters had no knowledge of Patricia's death, Mr. Fomukong's knowledge of Patricia's death was imputed to the company under principles of agency.

alleged insured would in fact be considered an insured, and no question as to the scope of coverage absent forfeiture (*i.e.,* whether coverage was provided under the terms of the policy). Here, according to the policy's terms, Doreen's coverage terminated at the end of the initial policy period. Existing precedent prohibits using the doctrine of estoppel to impose coverage after that point.

More analogous to the case *sub judice* is *Nielson, supra.* In that case, it was argued that "by accepting premiums subsequent to the death of [the named insured] and renewing the policy, [the insurer] has waived its right to deny coverage." 784 S.W.2d at 737. The *Nielson* court rejected that argument, reasoning that "waiver and estoppel cannot enlarge the risks covered by a policy and cannot be used to create a new and different contract with respect to the risk covered and the insurance intended." *Id.* The court distinguished the case before it from cases in which the insured seeks not "to create a new and different contract with respect to risk coverage, but rather ... to avoid a forfeiture of a policy." In forfeiture cases, the insured "may prevent an insurance company from avoiding payment when the insured fails to comply with some requirement of the policy." *Id.*

Similarly, we conclude that the doctrine of estoppel cannot apply in this case to create coverage after September 29, 2005, when coverage expired pursuant to the plain language of the policy terms.

### 4. Public Policy

Last, without citing a single authority, appellant contends that it is against Maryland's public policy "to allow an insurer to deny coverage after accepting a years worth of premium payments and after one of their agents [ ] promised coverage with full knowledge of the event the insurer later claims is the reason that it should not have to provide coverage." This argument lacks merit. We have concluded that, at the time of the accident, Doreen was not covered as a matter of law. Our legal conclusion is based on case law relevant to the issues

raised, and we have no reason to believe that such case law contravenes public policy.[5]

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

5. During oral argument, the question of Doreen's rights was briefly discussed, although Doreen did not participate in the appeal. Although the issue is not before us, in light of the circuit court's determination, and our affirmance, that Doreen was not covered after September 29, 2005, we note that, if MAIF pursues an action against her, a contribution or indemnity action by Doreen would not be barred by limitations.